[Crim. No. 11898. First Dist., Div. One. Apr. 5, 1974.]

THE PEOPLE, Plaintiff and Appellant, v.
LLOYD FOURSHEY et al., Defendants and Respondents.

## COUNSEL

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Jerome C. Utz and Thomas A. Brady, Deputy Attorneys General, for Plaintiff and Appellant.

Daniel H. Weinstein and William H. Stephens for Defendants and Respondents.

## OPINION

**ELKINGTON, J.**—The People appeal from an order (termed "judgment" in the notice of appeal) of the superior court granting defendants' motions to suppress evidence (under Pen. Code, § 1538.5), and to dismiss an in-

formation (under Pen. Code, § 995) charging them with possession of heroin for sale (Health & Saf. Code, § 11500.5 [now Health & Saf. Code, § 11351]) and transportation of heroin (Health & Saf. Code, § 11501 [now Health & Saf. Code, § 11352].)

The motions had been submitted for decision on the transcript of a preliminary hearing which contained the following uncontradicted evidence.

A previously tested and reliable informer and heroin addict told City of Richmond police officers that he had been purchasing large quantities of heroin from one Lloyd Fourshey over a six-to-eight-month period. He informed them that Fourshey often delivered the heroin to his (the informer's) apartment in Richmond. Sometimes, he said, Fourshey came alone with the stuff, but at other times he came with another man, or with one Marie from Marin City or one Vera from San Francisco. "When he was with somebody, part of the time the other person would have it." If he was with Marie "there was a 50-50 chance that she would be carrying the dope." The police were unacquainted with Fourshey or with his picture. An inquiry by the police of Marin County authorities disclosed that Fourshey was considered one of the largest heroin dealers of that county.

The informant agreed with the police to arrange another such purchase from Fourshey, thus to help them make a case. He telephoned Fourshey, saying he was ready to buy; Fourshey stated he would be over that evening, and further said: "We are going to do something different this time." The informer then called Fourshey's associate, Marie of Marin City, and asked her about the "difference." Following this call he told the police to "expect a new person" with Fourshey that evening. The informant agreed to signal the police when Fourshey and the "new person" arrived at the street level front door of his apartment house, by opening the drapes of his apartment's front room. Later when his bell rang, the informer over the "intercom," learned that Fourshey was at the street door. He told Fourshey that he would come down to open the door as the electric door opener was inoperative. But instead he opened the drapes.

Waiting police officers, observing the signal, walked over to the apartment house where they found a man and a girl "at that front door." The officers had never seen either of them before. One of the officers identified himself "as a police officer and told them that they were going to be searched and, put their hands above their heads." A search of the man uncovered no contraband. A policewoman in attendance then searched the girl; "three packages of plastic rolled in a roll" were found in "the center front, tucked inside her skirt." The man was defendant Lloyd Fourshey and the girl,

defendant Sunny Lane O'Brien. The packages contained heroin, the seizure of which was the subject of the motions in the superior court.

No challenge was made in the superior court to the right of the police to search Fourshey. Such a challenge would have been futile, for concededly having cause to arrest him it was immaterial that the search preceded the arrest. (See *People* v. *Terry,* 70 Cal.2d 410, 429 [77 Cal.Rptr. 460, 454 P.2d 36] [cert. den., 399 U.S. 911 (26 L.Ed.2d 566, 90 S.Ct. 2205)].)

The issue before us is whether the superior court was legally justified in its determination that the police had no reasonable cause to arrest or to search defendant Sunny Lane O'Brien. The test, of course, is whether there was substantial evidence in support of the court's determination. (See *People* v. *Tenney,* 25 Cal.App.3d 16, 27-28 [101 Cal.Rptr. 419].)

The factual context is unusual and we are offered no direct authority reasonably in point. ■ We therefore consider the often repeated basic rule for our guidance in such cases: " 'There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances[,] . . . on the total atmosphere of the case.' " (*People* v. *Superior Court (Kiefer)* 3 Cal.3d 807, 827 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559]; *People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577] [cert. den., 364 U.S. 841 (5 L.Ed.2d 65, 81 S.Ct. 79)].)

■ The question then is whether the police officers, as persons of "ordinary care and prudence" would be led, from the information known and facts apparent to them, to "entertain an honest and strong suspicion" that the girl standing at the apartment house door with Fourshey was his accomplice in the delivery of heroin. (See *People* v. *Terry,* 2 Cal.3d 362, 393 [85 Cal.Rptr. 409, 466 P.2d 961] [cert. dism., 406 U.S. 912 (32 L.Ed. 2d 112, 92 S.Ct. 1619)].) If so, their conduct in searching and then arresting her was reasonable, and there was no Fourth Amendment violation.

Initially, we note that the information imparted to the police came from a previously tested reliable informant. As reasonable men of "ordinary care and prudence," they were justified in believing and acting upon it. (*People* v. *De Santiago,* 71 Cal.2d 18, 21-22 [76 Cal.Rptr. 809, 453 P.2d 353].)

This reliable information had disclosed that Fourshey and another person, probably a girl, were coming to the informer's apartment for the

purpose of delivering heroin, with a high probability that the other person might be carrying it. The prearranged signal, also reliable information, supported the police conclusion that the couple had arrived at the front door of the apartment building. Hastening to that point they observed the two defendants waiting for the front door to be opened.

We opine that one who, upon being informed as were the police, did *not* at least entertain "*an honest and strong suspicion*" that the two persons at the front door were engaged in making an illicit narcotic delivery, would be a rare person indeed. Certainly he would not meet the law's standard of a reasonable man of "ordinary care and prudence."

We are unimpressed by defendants' argument that the girl *could,* independently of Fourshey, have arrived at the apartment house door. To be sure, as with most things, that *could* have been *possible*. But the police, in determining the existence of probable cause, were concerned with whether there was a *reasonable probability* that the girl was a party to a narcotic delivery. In this determination they were held to no standard of *absolute, or near, certainty,* or of *persuasion beyond a reasonable doubt* or even of *preponderance of the evidence* known or apparent to them. Indeed, as we have pointed out, their conduct was proper if, as reasonable men, they could and did entertain "an honest and strong *suspicion*" that the girl was accompanying Fourshey.

Indeed, had there been no person in the proximity of Fourshey at the apartment house door when the police arrived, there would have been much less probability that a narcotic drop was being made. For then, the presence alone of a man unknown to the waiting police, would be contrary to the information previously furnished by the informer.

And we advert again to the conceded (and established) fact that the police had probable cause to arrest and search Fourshey. When that search was unproductive the probability—and therefore the probable cause to believe—that his nearby female attendant possessed the promised heroin, was heightened.

While conceding probable cause as to himself, Fourshey contends that there was no probable cause to arrest and search the girl. But the police information was simply that two persons unknown to them were to arrive for the purpose of delivering heroin to the informer. The probable cause to arrest and search existed with equal strength as to both of the parties found at the front door when the informer's signal was given.

No substantial evidence is found in support of the trial court's conclusion that the police officers had acted unreasonably; the Fourth Amendment does not appear to have been violated. The order of the superior court will be reversed.

Reversed.

Molinari, P. J., and Sims, J., concurred.