[Crim. No. 37018. Second Dist., Div. One. Mar. 31, 1981.]

In re JONATHAN M., a Person Coming Under the
Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JONATHAN M., Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Diane M. L. Tan, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and Anthony D. Blankley, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

LILLIE, J.—The minor appeals from disposition order entered on order sustaining petition charging unlawful driving and taking a motor vehicle. (§ 10851, Veh. Code.)

On the night of November 2 Mrs. Lopez' locked 1963 Chevrolet was stolen from its parking place; two days later it was returned to her with a damaged left windwing and a different ignition key.

At 3:30 a.m. on November 3 Officers Anderson and Henson riding in a patrol car observed a car containing 5 young people, 15 or 16 years old, stopped at a red light; driving in the opposite direction, they pulled up alongside of the vehicle and looked in; Officer Anderson observed the driver and seated next to him the minor, and in the rear seat a girl and two males; the driver's windwing of the vehicle was damaged; Officer Henson directed the spotlight into the vehicle, and the minor ducked down in the front seat and put his arm up over his head bringing his jacket with it trying to shield himself from the view of the officers; the light changed and the driver made a hard right turn and accelerated driving away at a high rate of speed; they turned around and pursued the vehicle; as they drove around a brick building, they saw all of the occupants jump out of the car while it was still in motion and run in all directions leaving the car to continue down the street unoccupied with the engine still running; the vehicle hit the curb and Officer Anderson jumped in, brought it to a stop and parked it; he tried to pull out the ignition key but could not and left the vehicle with the key still in it to pursue its occupants; he started a small foot search but found no one.

In the patrol car he and Officer Henson circled the block and saw a male standing on the corner; they stopped to talk to him and recognized him as the minor who had been seated in the front passenger seat of the car; in casual conversation the minor told them he was waiting for a friend; they did not arrest him at the time but drove away keeping him under observation in the rearview mirror to determine if his friend was one of the others in the car; they watched the minor walk up the alley toward the abandoned car; when they approached it they saw the minor, and while they could not be sure "whether he was leaning in the car, or what," they did see him standing next to the open driver's window with his right side to the car. Officer Anderson exited the patrol car to conduct an investigation; the minor was not free to leave; as he

started to ask the minor preliminary questions such as his name and where he was going, he looked into the car and saw the ignition key was missing; he searched the minor's pockets for the key and found it in his right jacket pocket; the minor was arrested. After being advised of and having waived his *Miranda* rights the minor told Officer Anderson that he was not driving the car but that the key was his, he knows it is wrong to steal and he had been recently arrested in Gardena for joyriding.

In his defense the minor testified he was waiting at a bus stop after visiting a friend and observed the car with its occupants and the police direct a spotlight inside and pursue the car; the police circled the block, stopped and talked to him; he told them he had just come from a friend's house; then he became curious and walked to the abandoned car but took nothing from it; on his return to the bus stop he was stopped by the officers; Officer Anderson said nothing, went to the abandoned car, returned, handcuffed him, searched every pocket and came up with a key which was planted in his pocket; Officer Henson struck him numerous times with his flashlight. He denied giving any statement to anyone about driving or riding in the car but admitted he had been arrested for joyriding in Gardena; he never rode in the abandoned car.

The minor moved to suppress the key on the ground of unlawful search. The court denied the motion citing the testimony of Officer Anderson. ▇▇ Appellant challenges the legality of the search of his pockets on the ground it was not a pat-down search for weapons but an exploratory search and conducted prior to an arrest for which there was no probable cause. We conclude on the foregoing evidence viewed in a light most favorable to the court's order denying motion to suppress the key (*In re Roderick P.* (1972) 7 Cal.3d 801, 809 [103 Cal.Rptr. 425, 500 P.2d 1]) that before the search of the minor's pockets the officer had probable cause to arrest him and although the search preceded the arrest it was substantially contemporaneous therewith and incident to a lawful arrest.

First, Officer Anderson had reasonable cause to believe a crime had been committed, i.e., the vehicle had been stolen. He first saw the car full of teenagers stopped for a red light at 3:30 a.m.; the windwing had been broken, a common means of entry to a locked vehicle; when the light changed the driver accelerated and sped away from the police car; he pursued the vehicle and observed the occupants abandon the car by

jumping out of it while it was still moving and fleeing in all directions; obviously the ignition key did not belong to the vehicle because he could not easily remove it at the time he parked it.

Second, at the time Officer Anderson approached the minor who was standing against the driver's open window of the vehicle, and questioned him he properly detained him. The record reflects the existence at that time of suspicious and articulable facts which reasonably caused Officer Anderson to believe that some activity out of the ordinary had taken place, it was related to crime and the minor was connected with it (*People* v. *Bower* (1979) 24 Cal.3d 638, 644 [156 Cal.Rptr. 856, 597 P.2d 115]); and that Officer Anderson personally entertained such suspicions and these were subjectively reasonable. (*In re Tony C.* (1978) 21 Cal.3d 888, 893, fn. 2 [148 Cal.Rptr. 366, 582 P.2d 957].) The minor had been seated with the driver in the front seat of the car; he had tried to duck down and shield himself from view of the officers when the spotlight was directed to the interior of the vehicle; he abandoned the car while it was still in motion and fled from the scene; he hung around in the area until he thought the officers had gone then returned to the abandoned car; he was seen leaning into the open driver's window or standing by it. The legality of the detention is manifest.

Third, when Officer Anderson observed that the ignition key which he left in the vehicle had been removed, he had reasonable cause to believe that the minor had committed an offense. █ "'Cause for arrest exists when the facts known to the arresting officer "would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." [Citations.]'" (*People* v. *DeVaughn* (1977) 18 Cal.3d 889, 895 [135 Cal.Rptr. 786, 558 P.2d 872].) Each case must be decided on its own facts and circumstances. (*People* v. *Superior Court* (*Kiefer*) (1970) 3 Cal.3d 807, 827 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559].) The question then is whether Officer Anderson as a person of ordinary care and prudence would be led by the facts apparent to him to entertain an honest and strong suspicion that the minor committed a crime. If so, his conduct in searching and then arresting the minor was reasonable, and there was no Fourth Amendment violation. (*People* v. *Fourshey* (1974) 38 Cal.App.3d 426, 429 [113 Cal.Rptr. 275].) █ Officer Anderson had reasonable cause to believe that the minor had stolen the vehicle by using the ignition key. Obviously the key did not belong to the car and had been used by the minor to steal the vehicle. It ill fit the ignition to the extent that the officer could

not readily remove it. The ignition key is a device used in stealing automobiles. The only reasonable conclusion is that the key belonged to the minor, he returned to the abandoned vehicle to retrieve it, and did so. At that time Officer Anderson had probable cause to arrest the minor. He searched the minor's pockets, found the key and arrested the minor. As long as probable cause to arrest exists before the search, a search substantially contemporaneous with the arrest is incident thereto and proper. (*United States* v. *Chatman* (9th Cir. 1977) 573 F.2d 565, 567; *People* v. *Terry* (1969) 70 Cal.2d 410, 429 [77 Cal.Rptr. 460, 454 P.2d 36]; *People* v. *Cockrell* (1965) 63 Cal.2d 659, 666-667 [47 Cal.Rptr. 788, 408 P.2d 116].) Once there is probable cause for an arrest it is immaterial that the search preceded the arrest. (*People* v. *Terry, supra,* 70 Cal.2d 410, 429; *People* v. *Satchell* (1978) 81 Cal.App.3d 347, 353 [146 Cal.Rptr. 307]; *People* v. *Fourshey, supra,* 38 Cal.App.3d 426, 429; *People* v. *Clayton* (1970) 13 Cal.App.3d 335, 338 [91 Cal.Rptr. 494]; *People* v. *Lovejoy* (1970) 12 Cal.App.3d 883, 887 [91 Cal.Rptr. 94].)

■ Appellant challenges the sufficiency of the evidence to support the order sustaining the petition for a violation of section 10851, Vehicle Code on the ground there was no evidence connecting him with the unlawful driving[1] or taking of the vehicle. The record demonstrates substantial evidence to support the court's finding that the minor took the vehicle. (*In re Roderick P., supra,* 7 Cal.3d 801, 808-809.

Mrs. Lopez' locked parked 1963 Chevrolet was stolen during the night of November 2; when it was returned, a key not belonging to the vehicle was in the ignition. In the early morning hours of November 3 the officers observed the minor riding in the front passenger seat of the 1963 Chevrolet, and when they looked into the car he tried to shield himself from their view. When he was arrested the minor stated then reemphasized that he was not driving the car but the key was his; on the witness stand he testified he had never been in the car. The minor fled with the others from the moving vehicle after being pursued by the officers; on the stand he testified he was only a bystander waiting for a bus at 3:30 in the morning and walked to the abandoned car out of curiosity. An ignition key had been left in the stolen car; after the minor was seen to lean into the driver's side and the key was missing, it

---

[1] It was not contended by anyone that the minor drove the stolen vehicle. After his arrest the minor twice told Officer Anderson he did not drive the car and Officer Anderson said he knew that.

was found in his pocket; upon his arrest the minor admitted the key was his and that he knew it was wrong to steal. The minor testified that on his way from the abandoned car to the bus stop he was stopped by the officers; Officer Anderson said nothing, went to the abandoned car, returned, handcuffed him, searched his pockets, planted the key in his pocket and came up with the key, then his partner beat him with his flashlight. The minor's testimony in substantial particulars, e.g., riding in the vehicle and possession of the key, was contrary to his prior statements to police. He did not simply deny he had stolen, driven or ridden in the car but ventured upon an explanation (of his presence there and his possession of the key) so unusual that the judge could conclude that it was an intentional fabrication indicating consciousness of guilt and the absence of any true exculpatory explanation. (*People* v. *Amador* (1970) 8 Cal.App.3d 788, 791-792 [87 Cal.Rptr. 662].)

The minor was found leaning against the open driver's window of the stolen Chevrolet in which he had just been a passenger and from which he had fled with an ignition key, that had been in the ignition of the Chevrolet, in his pocket. Thus, the minor was in possession of the very instrument or device that was needed to make the vehicle run, thereby exercising dominion and control of the stolen vehicle.[2] The unlawful taking of the vehicle having been clearly established only slight evidence was necessary to connect the minor in possession of it with the commission of the crime. His possession of the recently stolen vehicle and an explanation from the minor that did not invite reasonable acceptance, coupled with inconsistencies that tended to cast doubt upon the truth of his testimony, are sufficient to sustain a conviction. (*People* v. *Brown* (1969) 1 Cal.App.3d 161, 166 [81 Cal.Rptr. 401]; *People* v. *Mosqueiro* (1970) 12 Cal.App.3d 1173, 1176 [91 Cal.Rptr. 370].) In addition is the minor's conduct in trying to avoid the view of the officers while seated in the front passenger seat of the stolen vehicle; his flight from the moving vehicle which affords a basis for an inference of consciousness of guilt and constitutes an implied admission (*People* v. *Mulqueen* (1970) 9 Cal.App.3d 532, 543 [88 Cal.Rptr. 235]); the manner in which the minor came into possession of the ignition key; and his extrajudicial statement that the key was his, his insistence he was not driving the car and he knew it was wrong to steal.

---

[2]Although the minor may have had no interest in retaining the Chevrolet, it is plain that he was interested in retrieving the key that obviously he had used in stealing the vehicle in the first instance.

■ At the disposition hearing the court ordered the minor placed in the camp community placement program and imposed 28 conditions of probation. Condition 9 was that the minor attend a school program approved by the probation officer without absence unless excused by certain specified individuals. Condition 10 provided: "[Y]ou shall promptly notify the probation officer of each absence from a single class, and for each absence from a class that's unexcused, you will spend one day in Juvenile Hall." It is contended by appellant that condition number 10 is invalid and should be stricken. While we deem to be proper a provision making regular school attendance a condition of probation, and a subsequent detention for evaluation of that condition after an appropriate hearing (*In re Phillip A.* (1980) 109 Cal.App.3d 1004, 1007 [169 Cal.Rptr. 88]), it is not clear that the provision here is not self-executing (*In re Gerald B.* (1980) 105 Cal.App.3d 119, 127 [164 Cal.Rptr. 193]), thus we conclude that the order should be modified.

The order sustaining the petition is affirmed. The disposition order is modified by striking from condition 10 after the word "class" the following: ", and for each absence from a class that's unexcused, you will spend one day in juvenile hall." As modified the order is affirmed.

Spencer, P. J., and Hanson (Thaxton), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 27, 1981.