[No. A055292. First Dist., Div. Two. Oct. 30, 1992.]

In re RONNIE P., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
RONNIE P., Defendant and Appellant.

**COUNSEL**

Valerie C. West for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Joanne S. Abelson and Allan Yannow, Deputy Attorneys General, for Plaintiff and Respondent.

**KLINE, P. J.**—Ronnie P. appeals from an order of the juvenile court committing him to the California Youth Authority. We will reverse because (1) the fact that appellant left the company of a custodian, which was the only fact before the court at the jurisdictional hearing, was an insufficient basis for sustaining the petition; and (2) the commitment to the Youth Authority rested not on the required assessment of present circumstances and statutory criteria, but on an earlier order purporting to impose a "suspended" Youth Authority commitment.

### BACKGROUND

On June 4, 1991, the juvenile court sustained a petition alleging that appellant, then 15, had violated Health and Safety Code section 11351.5 (possession of cocaine base for sale). At the dispositional hearing following the June 1991 finding, the probation officer recommended that appellant be committed to the Youth Authority. The transcript of that hearing is not included in the record, but counsel and one Dr. Staggers apparently argued against a Youth Authority commitment on grounds stemming from the fact that appellant had been attacked with a baseball bat, sustaining serious head injuries which were being treated by Dr. Staggers at Children's Hospital in Oakland. The court directed the probation department to make a more thorough search for alternative placements. At a continued hearing on July 16, 1991, the court ordered appellant into placement, with the expectation that he would enter a Sacramento program called Positive Transitions. In the course of the hearing the court indicated that it was also imposing a "stayed" or "suspended" Youth Authority commitment. (See fn. 4, *post.*)

On August 14 a supplemental petition was prepared under Welfare and Institutions Code section 777,[1] alleging that the previous dispositional order had been ineffective in that appellant had left his court-ordered placement on July 30 and his whereabouts were unknown. The petition also alleged that in previous proceedings appellant had been found to have committed drug offenses on four occasions, carried a concealed weapon, and escaped from custody.

At a pretrial hearing on August 23, the petition was amended to state that appellant left the custody of a transportation officer on July 30. Appellant's

---

[1]All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

attorney was willing at that time to stipulate to jurisdiction, but during the course of admonitions appellant stated that he wanted a trial. The matter was continued to September 4, at which time counsel stated that appellant was prepared to "submit the matter of 777 insofar as the allegations were that he departed from the company of a custodian." The court asked whether there was a "factual basis," to which counsel replied, "Yes." The court then stated, "Pursuant to his submission, we'll find that he's described under . . . 777(A) of the Welfare and Institutions Code in that he violated his probation and that the previous order has not been effective in his rehabilitation as alleged in the petition."

According to the probation officer's report prepared for the dispositional hearing on September 18, the proceeding arose from events on July 30, when the program director of Positive Transitions took appellant from Sacramento to Oakland in the mistaken belief that his attendance was required at a placement review hearing. After the hearing they stopped at an East Oakland restaurant, whereupon appellant "went AWOL." The report recommended that appellant be returned to placement at Positive Transitions, noting that the director of that program "believes that Ronnie is workable, and that if he does not return to the Oakland area for some time he could make progress in her program." The report observed that "Ronnie is still 15 years old, and there will be plenty of time to send him to the California Youth Authority should he fail placement again." It also noted that appellant "continues to have physiological consequences from the head trauma he suffered last December" and that "[i]t should be at least another year for him to heal fully."

At the dispositional hearing, the deputy district attorney reminded the court of its earlier order that appellant would be sent to the Youth Authority if he got in any further trouble. The court found this argument dispositive and committed appellant to the Youth Authority. (See fn. 5, *post.*) This appeal followed.

I.

INEFFECTIVENESS OF EARLIER DISPOSITION

■ Appellant first contends that there was insufficient evidence before the court at the September 4 hearing to warrant finding jurisdiction under section 777. We agree. The limited nature of appellant's admission, coupled with the absence of any competent evidentiary showing in support of the petition, deprived the court of an adequate evidentiary basis on which to sustain the jurisdictional allegations of the petition.

An adjudication under section 777 must rest on "facts sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the minor." (§ 777, subd. (a)(2); see *In re Angel E.* (1986) 177 Cal.App.3d 415, 418-421 [223 Cal.Rptr. 4].) The petition must contain a "concise statement" of these facts. (§ 777, subd. (a)(2).) The facts must be proven beyond a reasonable doubt. (*In re Arthur N.* (1976) 16 Cal.3d 226, 240 [127 Cal.Rptr. 641, 545 P.2d 1345].) The showing must be made by competent evidence. (See *In re Martin L.* (1986) 187 Cal.App.3d 534, 540-541 [232 Cal.Rptr. 43]; *In re Gladys R.* (1970) 1 Cal.3d 855, 860 [83 Cal.Rptr. 671, 464 P.2d 127].)

Appellant correctly points out that aside from his admission that he "departed from the company of a custodian," there was *no* evidence before the court at the jurisdictional hearing. There was no indication that the court proposed to or did take judicial notice of any matter, including its own files. Certainly it did not apprise the parties of any intention to do so, as is required by Evidence Code section 455, subdivision (a). (Compare *In re Martin L.*, *supra*, 187 Cal.App.3d 534, 544 [judicial notice with counsel's consent]; *In re John G.* (1977) 72 Cal.App.3d 242, 246-247 [139 Cal.Rptr. 849] [dispositional order supported by whole record, which was fully discussed and not objected to].) If the court relied on earlier probation reports, or even its own memory of prior proceedings, it thereby erred. (See *In re Angel E.*, *supra*, 177 Cal.App.3d 415, 419.)

Indeed the court seems to have found subsidiary facts for which there is no evidentiary support, competent or otherwise, in this record. The court declared that appellant's conduct "violated his probation," which we take to mean that appellant violated some directive previously imposed concerning his own conduct. But there is no indication that appellant had ever been ordered to remain in the custody of Positive Transitions or of the person whose company he left. In the absence of such evidence "it cannot be said that, as a factual matter, the minor violated a court order." (*In re Denise C.* (1975) 45 Cal.App.3d 761, 765 [119 Cal.Rptr. 735].)

Assuming the admonitions not to "screw[ ] up" or "get in any further trouble" (see fn. 4, below) can be viewed as orders, they were too general to support a finding that appellant violated a court order. (See *People v. Smith* (1970) 12 Cal.App.3d 621, 627-628 [90 Cal.Rptr. 811].) This is particularly true since the admitted conduct was not a violation of criminal law. Section 871 makes it a misdemeanor for a minor to escape or attempt to escape from a county juvenile home, ranch, camp, or forestry camp, or to escape during transportation to or from such a place. However, since appellant was not in custody of any of the specified institutions, his conduct did not violate that

statute. (*In re Steven E.* (1991) 229 Cal.App.3d 1162, 1163, 1167 [280 Cal.Rptr. 540].)

Nor was the sole fact of appellant's leaving the company of a custodian legally sufficient to establish "that the previous disposition [was] such a complete failure that any further effort at that dispositional level would be unavailing." (*In re Joe A.* (1986) 183 Cal.App.3d 11, 26 [227 Cal.Rptr. 831].) A single "deviat[ion] from the paths of rectitude" will not automatically demonstrate such a "complete failure." (*In re Donna G.* (1970) 6 Cal.App.3d 890, 895 [86 Cal.Rptr. 421]; *In re Denise C., supra*, 45 Cal.App.3d at p. 767.) Here appellant had been at Positive Transitions less than two weeks—hardly enough time for anyone to reasonably conclude that he would not respond to the program. (See *In re Scott K.* (1984) 156 Cal.App.3d 273, 277 [203 Cal.Rptr. 268] [effectiveness of latest disposition cannot be assessed until it has been "executed"].)[2] There was nothing before the court which would permit a finding beyond a reasonable doubt that the previous disposition was ineffective. Accordingly, the finding of jurisdiction under section 777 was not supported by substantial evidence.

The error in sustaining the petition was prejudicial because far from establishing the inevitability of the trial court's finding, much of the evidence later presented tended to rebut the notion that the single instance of misconduct alleged in the petition established the rehabilitative failure of the placement at Positive Transitions. Not only had there been insufficient time to assess the efficacy of the program in appellant's case, there was also considerable evidence that his "going AWOL" was situational, i.e., a reaction to circumstances which need not recur. He did not escape from the Positive Transitions facility in Sacramento, but left the company of a worker

---

[2]Respondent cites *In re Steven O.* (1991) 229 Cal.App.3d 46, 59 [279 Cal.Rptr. 868] (review den.), where the court criticized *Scott K.*'s requirement that the previous disposition be "executed." The court asserted that such a rule could produce "absurd results," as in a hypothetical situation where the minor murders a fellow ward or counselor while awaiting transportation to a camp under the latest dispositional order. "Must the minor," the court asked, "be sent to camp and complete the commitment before the juvenile court can find that its prior dispositional order was ineffective in rehabilitation?" (*Ibid.*) Our answer to this query is that the minor need not "complete the commitment," but neither must the courts rewrite section 777 to avoid such an absurdity. Having committed a new criminal act, the minor in the cited example is subject to a complete reassessment of disposition under a "subsequent" section 602 petition, without the proof of dispositional failure required in a section 777 proceeding. (See *In re Michael B.* (1980) 28 Cal.3d 548, 553 [169 Cal.Rptr. 723, 620 P.2d 173].) Furthermore, the hypothetical, and the court's overall criticism of *Scott K.*, rests on a false synonymy between the terms "executed" and "completed." Indeed it *would* be absurd to suggest that a new disposition cannot be imposed until the previous one has been "completed." The teaching of *Scott K.* is that a dispositional order cannot be found ineffective under section 777 before it has a reasonable chance to succeed. We can find no fault with that proposition.

who had stopped to eat in appellant's own neighborhood in Oakland.[3] Appellant told the probation officer that he left because he was "tempted by the proximity to his grandmother's home." It appears that he should not have been in Oakland in the first place, but only found himself there because a program employee "mistakenly believed the minor needed to attend placement review that had been calendared." The program director at Positive Transitions continued to believe appellant was "workable," particularly if kept away from Oakland.

We conclude that had the court relied only on admissible evidence concerning the rehabilitative effectiveness of the prior placement order, it is reasonably probable that a result more favorable to appellant would have followed.

## II.

### Youth Authority Commitment

Appellant contends that the juvenile court abused its discretion in committing him to the Youth Authority. He asserts among other things that the court erred by relying on its previous dispositional order purporting to impose "stayed" or "suspended" Youth Authority commitment. This contention is meritorious.

At the July 1991 dispositional hearing the court stated that it was imposing a "suspended" Youth Authority commitment under which appellant would go to the Youth Authority if he "screw[ed] up" or got in "any further trouble."[4] At the September dispositional hearing from which this appeal

---

[3] According to the addresses of record, East Oakland is the home of the grandmother with whom appellant lived, as well as his father and other grandmother.

[4] The court itself first proposed the idea of a "stayed" Youth Authority commitment:

"THE COURT OFFICER: . . . . We'd ask that—

"THE COURT: Mr. Williams—

"THE COURT OFFICER: —he be continued to be a ward of the court.

"THE COURT: —I think Y.A. stayed with placement.

"THE COURT OFFICER: Pardon?

"THE COURT: Y.A. stayed and then placement so we have some—I mean, if he screws up in placement, then he goes to the Youth Authority.

"What do you think?

"The reason I interrupted is because we're about where you say that part; or do you want it just to be placement?

"What do you feel more comfortable with?

"THE COURT OFFICER: Probably placement with a CYA suspended.

arose, the court concluded that commitment to the Youth Authority necessarily followed from the fact that appellant "ran" in supposed violation of these admonitions.[5] This was error.

First we note the complete absence of authority for an order imposing a "suspended" or "stayed" Youth Authority commitment. Courts have permitted the imposition of a brief juvenile hall detention stayed on condition that other dispositional orders be performed. (E.g., *In re Mark M.* (1980) 109 Cal.App.3d 873 [167 Cal.Rptr. 461]; see *In re Ricardo M.* (1975) 52 Cal.App.3d 744 [125 Cal.Rptr. 291].) This practice has been codified at section 777, subdivision (e), which permits the court to enforce, upon a violation of "a condition or conditions of probation," a "stayed" order for confinement in a county institution for up to 30 days. The expression of this narrow authorization implies the exclusion of any broader authority for "stayed" dispositions, under the doctrine of *"expressio unius est exclusio alterius."* (See *In re Michael G.* (1988) 44 Cal.3d 283, 291 [243 Cal.Rptr. 224, 747 P.2d 1152].)

Nor do we find anything suggesting that the court may forego a thorough review of dispositional considerations in favor of a previously "stayed" Youth Authority commitment. Such a notion runs contrary to the basic purposes, principles, and procedures of juvenile law. ■ The stated central objective of the law with respect to delinquent children is to provide the "care, treatment and guidance which is consistent with their best interest, which holds them accountable for their behavior, and which is appropriate

---

"THE COURT: Suspended?
"THE COURT OFFICER: Yes.
"THE COURT: Okay. That's fine. Go ahead."
After the court made its dispositional order, it stated to the minor, "I'm suspending Youth Authority, so if you get in any further trouble, you're going to the Youth Authority."

[5] "Ms. HAYES: . . . I would call the court's attention to a statement made to minor on July 16th when CYA was suspended and your honor indicated to the young man 'any screw up or if you run, CYA is certain.' And the young man ran.

"I would say that under those circumstances, even if he'd only been at his placement for several weeks, he did in fact run, he did in fact screw up, and he should in fact go to the Youth Authority.

"THE COURT: That's pretty persuasive. Do you want to answer that, Mr. Norman?

"MR. NORMAN: Your honor, insofar as the minor . . . was only in placement for a relatively short period of time, they have not had an opportunity to assess whether or not he can conform his behavior and benefit from the placement there.

"THE COURT: It's not their fault. I told him that if he ran, he's going to go to the Youth Authority. So he's going to the Youth Authority. That's just the way it works. [¶] The previous order is set aside with the exception of wardship and any financial orders.

" . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"THE COURT: . . . . It's your own choice, Ronnie; sorry. I told you if you run, you're gone."

for their circumstances." (§ 202, subd. (b).) To determine what is appropriate under a given set of circumstances, a court must review those circumstances every time the minor appears for a dispositional hearing. Thus, "[j]uvenile courts . . . shall consider the safety and protection of the public and the best interests of the minor in *all* deliberations pursuant to this chapter." (*Id.*, subd. (d), italics added.) "*Each time* a ward comes before the court . . . , the goal of any resulting dispositional order is to rehabilitate the minor." (*In re Scott K., supra*, 156 Cal.App.3d 273, 277, italics added.) A lockstep escalation of dispositions "falls short of the particularized consideration which underlies the entire juvenile court system." (*In re Joe A., supra*, 183 Cal.App.3d at p. 29.)

We have found no decisions discussing a "stayed" Youth Authority commitment, but several cases make it clear that a juvenile court errs by purporting to determine dispositional issues in advance of the dispositional hearing. In *In re J. L. P.* (1972) 25 Cal.App.3d 86 [100 Cal.Rptr. 601], the court purported to give the minor a choice whether to be tried as an adult or under the juvenile court law. The court said that if the minor chose the latter and the petition were sustained, the minor would be committed to the Youth Authority. The minor so chose and the court so ordered, refusing to receive evidence concerning the possible efficacy of less restrictive dispositions. The commitment order was reversed, principally because the procedure involved an impermissible predetermination of dispositional issues prior to any hearing. (*Id.*, at p. 90.)

Two other cases recognize the impropriety of a dispositional order which purports to be "self-executing" (*In re Jonathan M.* (1981) 117 Cal.App.3d 530, 538 [172 Cal.Rptr. 833]), or to impose an "automatic" penalty for misconduct. (*In re Gerald B.* (1980) 105 Cal.App.3d 119, 126-127 [164 Cal.Rptr. 193].)

The commitment here was improperly "predetermined" by the "stayed" Youth Authority commitment purportedly imposed at the previous dispositional hearing. This fact is unequivocally established by the court's explicit reliance on the following syllogism: "I told him that if he ran, he's going to go to the Youth Authority.[6] So he's going to the Youth Authority. That's just the way it works." But as we have noted, that is *not* "the way it works"; the court is required to examine the entire dispositional picture whenever the minor comes before the court for disposition. It cannot treat an earlier order as "self-executing" or "automatic."

---

[6]In fact the court never told appellant "that if he ran, [he was] going to the Youth Authority." It made no reference to running away. The statements were that "if he *screws up* in placement, then he goes to the Youth Authority," and, as stated to appellant, "if you *get in any further trouble*, you're going to the Youth Authority." (Italics added.)

Nor could the court properly impose a "stayed" Youth Authority commitment by analogy to criminal law. ■ It is commonplace to grant probation to an adult offender subject to a stayed or suspended sentence which may be executed more-or-less automatically if the conditions of probation are violated. (See 3 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Punishment for Crime, §§ 1695, 1715, pp. 2005, 2027.) However, a dispositional hearing on a supplemental juvenile court petition "is only superficially analogous to an adult probation revocation hearing because neither the purposes nor the consequences of these proceedings are the same . . . . [J]uvenile probation is not, as with an adult, an act of leniency in lieu of statutory punishment; it is an ingredient of a final order for the minor's reformation and rehabilitation. A grant of juvenile probation is not revoked upon sustaining a supplemental petition; rather, the entire underlying order is subject to modification 'as the judge deems meet and proper.'" (*In re Antonio A.* (1990) 225 Cal.App.3d 700, 706 [275 Cal.Rptr. 482], quoting § 775; see *In re Bernardino S.* (1992) 4 Cal.App.4th 613, 622, fn. 5 [5 Cal.Rptr.2d 746], quoting 1 Cal. Juvenile Court Practice (Cont.Ed.Bar 1981) § 9.52, p. 256 ["juvenile probation is not an act of leniency or an alternative to a more rigorous prescribed penalty, but 'a final order made in the minor's best interest'"]; *In re Arthur N., supra,* 16 Cal.3d 226, 236.)

In making a dispositional order, of course, the juvenile court can not only direct an appropriate placement but may also issue orders concerning the minor's conduct. (§ 727, subd. (a) [where minor adjudged a ward of court]; Cal. Rules of Court, rule 1493(d) [same]; *In re Michael G.* (1977) 76 Cal.App.3d 872, 875 [143 Cal.Rptr. 163] [where not adjudged a ward]; *In re Bacon* (1966) 240 Cal.App.2d 34, 59-60 [49 Cal.Rptr. 322] [same].) In content these orders are often comparable to adult probation conditions, and regrettably the similarities have led both legislators and courts to refer to them as "conditions of probation."[7] They differ, however, in the critical respect that with narrow statutory exceptions, violation of such an order cannot lead automatically to imposition of some reserved measure, but requires a complete review of the order and such amendments as the court finds "meet and proper" under the governing statutory criteria.

This brings us to respondent's assertion that appellant "squandered his chances at a lesser alternative." Underlying this argument is the concept of

---

[7]This court has previously commented upon the inappropriateness of "probation" terminology in juvenile statutes and cases. (*In re Bernardino S., supra,* 4 Cal.App.4th at p. 622, fn. 5 ["somewhat misleading"]; see 1 Cal. Juvenile Court Practice, *supra* (Supp. 1991) § 11.41, p. 189 [statutory language "reflects a misunderstanding of the nature of juvenile disposition orders"].) A better term might be "conduct orders" or "conduct terms." This would focus on the nature of the order without importing unwanted resonances from criminal law.

retributive justice which is explicitly incorporated in adult penal law (Pen. Code, § 1170, subd. (a)(1)) and just as explicitly excluded from the juvenile court law (§ 202, subd. (e)). A juvenile disposition is not an act of graceful abstention by the state, the benefits of which the minor forfeits by misconduct. The significance of subsequent misconduct in juvenile cases is that it may reveal the ineffectiveness of a current disposition in achieving the statutory objectives of rehabilitating the minor and protecting the public.

▮▮ A "stayed" Youth Authority commitment has no place in this scheme.[8] The law presumes that at a given point in time the statutory criteria are best satisfied by one dispositional alternative. If commitment appears to be that alternative, then the minor should be committed. If some lesser alternative appears preferable, the court should choose the alternative. The court cannot determine in advance that if the lesser alternative fails, commitment will become the optimal disposition. Instead a failure of the lesser disposition calls for a complete reassessment of dispositional issues in light of then-prevailing circumstances.

By relying on the "stayed" commitment, the court here failed to "consider" the dispositional evidence, including the social study. (See Cal. Rules of Court, rule 1492(b); Welf. & Inst. Code, § 706; *In re L. S.* (1990) 220 Cal.App.3d 1100, 1107 [269 Cal.Rptr. 700] [failure to consider current dispositional report was reversible error not subject to harmless error analysis]; *In re Devin J.* (1984) 155 Cal.App.3d 1096, 1101 [202 Cal.Rptr. 543] [reliance for dispositional purposes on limited social study prepared for fitness hearing constituted denial of fair and complete hearing, warranting reversal].)[9] This inference is reinforced by the fact that when counsel for appellant pointed out the brevity of appellant's stay at Positive Transitions, the court's only reply was, "It's not their fault." (See fn. 5, *ante.*) This strikingly irrelevant comment suggests a refusal to consider the facts noted

[8]Of course, the threat of Youth Authority commitment may have a salutary effect on a particular minor's attitude, and nothing said here should be understood to restrict the court's ability to employ such a threat to encourage the minor's reform. Further, a minor's failure to heed such a warning may be taken as some evidence of resistance to rehabilitation. Aside from these purposes and effects, however, such a warning can have no legal bearing on a subsequent dispositional proceeding. Certainly it cannot operate to foreclose the imposition or continuation of a less restrictive placement.

[9]Appellant contends that the record lacks the required recital that the court had read the social study. (§ 706; Cal. Rules of Court, rule 1492(b).) Such a recital is made, or rather the appropriate box is checked, on the form dispositional order. Whether the court took any note of the contents of the report is another matter. At the hearing, the deputy district attorney asked the court whether the report recommended "a CYA commitment stayed," to which the court replied, "I don't think so." In fact that *was* the recommendation: "placement with a stayed Youth Authority commitment."

in the report, or any other facts tending to support a disposition less restrictive than Youth Authority.

By failing to consider any of the prescribed dispositional factors the court also failed to make a finding on critical ultimate issues[10] and failed to exercise a discretion conferred and compelled by law. Such error constituted the denial of a fair hearing and deprivation of fundamental procedural rights compelling reversal. (See *In re Geronimo M.* (1985) 166 Cal.App.3d 573, 587-588 [212 Cal.Rptr. 532] [Youth Authority commitment circumventing procedures under § 777 was prejudicial notwithstanding contention that appellant would have been committed under proper procedures]; *In re Willie T.* (1977) 71 Cal.App.3d 345, 353-354 [139 Cal.Rptr. 439] [extrastatutory procedure by which minor was placed on probation and probation was revoked was prejudicial because it modified a prior disposition to minor's detriment without complying with requirements of § 777]; *Reifler* v. *Superior Court* (1974) 39 Cal.App.3d 479, 485 [114 Cal.Rptr. 356] [refusal to exercise discretion required by law to be exercised required remand for that purpose]; *In re Michael G., supra,* 76 Cal.App.3d at p. 875 [failure to exercise discretion].)

The orders appealed from are reversed.

Smith, J., and Phelan, J., concurred.

Respondent's petition for review by the Supreme Court was denied February 10, 1993.

---

[10]For these purposes it is important to distinguish between a tribunal's failure to address and resolve a issue, and its failure to expressly recite its determination on that issue. (See *In re Jose R.* (1983) 148 Cal.App.3d 55, 61 [195 Cal.Rptr. 633] [failure to state finding as to probable benefit of Youth Authority commitment was harmless error].) Here the court did not merely fail to state a finding, but apparently failed to address or resolve the governing issues.