[No. A073287. First Dist., Div. Five. Feb. 7, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
TANYA TORRES, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.E.

## COUNSEL

George O. Benton, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Gerald A. Engler and Morris Beatus, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PETERSON, P. J.**—In this case, we hold, inter alia, that when defendants convicted of drug offenses are granted probation conditioned on participation in a residential drug treatment program, the court does not abuse its sentencing discretion by imposing as a standard condition of that probation a waiver of custody credits under Penal Code[1] section 2900.5, subdivision (a) for time spent in the applicable rehabilitation facility. In so holding, we follow one decision from Division Two of this district, *People v. Ambrose* (1992) 7 Cal.App.4th 1917 [9 Cal.Rptr.2d 812] (*Ambrose*), and conclude a later decision from the same division, *People v. Penoli* (1996) 46 Cal.App.4th 298 [53 Cal.Rptr.2d 825] (*Penoli*), was incorrectly analyzed. In addition, we reject appellant's claims of ineffectiveness of trial counsel and, therefore, affirm the judgment of conviction.

### I.   FACTS AND PROCEDURAL HISTORY

Appellant was a letter carrier for the United States Postal Service who delivered drugs from the mail truck she drove.

---

[1] All subsequent statutory references are to the Penal Code.

Officer Corrigan of the City of Napa Police Department and postal inspectors working for the United States Postal Service began an investigation of appellant after they received reports that appellant was delivering methamphetamine on her route, rather than mail.

Corrigan and the federal postal inspectors watched appellant on May 6, 1994, as she loaded up her mail truck at the start of the day, and headed out ostensibly to drive her mail route and deliver mail. They lost contact with appellant, who did not follow her route until after lunch, and did not follow her route directly but instead made some stops of unusual length.

Officer Corrigan approached appellant. Corrigan asked appellant if he could search the federal mail truck she was driving, stating that he was investigating allegations of drug trafficking. Appellant initially declined to consent, telling Corrigan that on any other day she would allow the search to occur, but that she could not allow a search that day because she had to attend an awards ceremony, and because a search would delay the mail, a federal offense.

Corrigan asked appellant if she would allow a search if he had brought federal postal inspectors with him. Appellant said she would allow a search by federal postal inspectors, if they were there. Corrigan then told appellant that he had men with him who were, in fact, federal postal inspectors, and he introduced the inspectors to appellant. Appellant then allowed the search by the postal inspectors to proceed. Inside the mail truck, the inspectors found a blue canvas bag, and appellant assisted the officers in removing some items from the bag. Inside the bag was an envelope. As the inspectors pulled the envelope from the bag, appellant said she had gotten it out of a mailbox and did not know what it was. The envelope did not contain a letter, and instead contained marijuana; a cigarette case in the bag contained methamphetamine. Appellant was arrested and charged with possession and transportation of methamphetamine, and possession of marijuana.

Appellant's trial counsel argued the evidence found in the bag should be suppressed, because appellant was detained by the authorities, and did not voluntarily consent to the search of the mail truck. The trial court denied the motion to suppress, finding as a factual matter that appellant did consent to the search after she was told postal inspectors would conduct it.

Appellant was tried and convicted by a jury.

At the time of sentencing, the trial court imposed a sentence of three years' probation, conditioned upon one hundred eighty days in jail and

appellant's participation in a residential drug treatment program as she had requested. The trial court imposed, as a standard condition of its grant of probation, a waiver of any custody credits provided by section 2900.5, subdivision (a)[2] for the time appellant would spend in the residential drug program. Appellant accepted this condition without objection.

## II. DISCUSSION

### A. *In Substance Abuse Cases, Trial Courts May Impose a Waiver of Credits for Time Spent in Residential Drug Treatment Facilities as a Standard Condition of Probation*

■ Appellant contends the trial court erred when sentencing her to probation on condition she attend a residential drug treatment program, by imposing an additional probationary condition the trial court termed a " 'standard condition' " of probation accompanying granting of such programs, i.e., that appellant waive all custody credits for time spent in the residential drug program. We reject this contention.

In *Ambrose, supra,* 7 Cal.App.4th at pages 1922-1924, Division Two of this district correctly rejected a similar contention, holding that it is within the power of the trial court to condition a grant of probation on the waiver of custody credits. The waiver of such custody credits serves an important function in encouraging the probationer to succeed on probation and recover from drug addiction. A failure to require waiver of such credits could practically mean that a probationer, while failing the treatment program, simply substitutes easier time in a residential drug treatment facility for custody in jail or prison. Spaces in such substance abuse programs are frequently a scarce commodity. The best interests of both society and the probationer are met by encouraging the success of treatment programs by conditioning attendance upon such a waiver, giving the probationer an additional incentive and reason to succeed. (*Id.* at p. 1925.) Division One of this district has followed the *Ambrose* decision. (*People* v. *Salazar* (1994) 29 Cal.App.4th 1550, 1553 [35 Cal.Rptr.2d 221] ["[I]t is well settled that a defendant may waive custody credits as a condition of probation, or in exchange for other sentencing considerations. (*People* v. *Ambrose* . . . .)"].)

Appellant, however, bases her contention of error on *Penoli, supra,* 46 Cal.App.4th at pages 302-304. The *Penoli* court recognized that judicial

---

[2]Section 2900.5, subdivision (a) provides, in relevant part: "In all felony and misdemeanor convictions, . . . when the defendant has been in custody, including, but not limited to, any time spent in a . . . rehabilitation facility . . . , all days of custody of the defendant . . . shall be credited upon his or her term of imprisonment . . . ."

sentencing discretion was properly exercised in *Ambrose*. *Penoli*, however, found such discretion was not exercised by the *Penoli* trial court, despite the pragmatic arguments in favor of encouraging the success of drug treatment efforts by the means the trial courts in *Penoli* and in this case adopted. *Penoli* instead laid down a rule proscribing trial courts from adopting a " 'standard practice' " of imposition of waiver of custody credits for time spent in drug rehabilitation treatment as a condition of probation. *Penoli* did not, however, reach what we consider to be the ultimate issue involved here and there: Does the condition of probation imposed bear a reasonable relationship to the offense and the offender?

■ Numerous decisions of our Supreme Court and this district have upheld the "broad discretion" granted to the trial courts in "routinely imposing" standard conditions of probation, where the conditions imposed, objectively viewed, bear a reasonable relationship to the crime or the rehabilitation of the offender. (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120-1121 [43 Cal.Rptr.2d 681, 899 P.2d 67] ["In granting probation, courts have broad discretion to impose conditions to foster rehabilitation and to protect public safety pursuant to . . . section 1203.1." A condition of probation requiring restitution for an auto accident by the offender convicted of a hit-and-run collision was reasonable.]; accord, *People v. Welch* (1993) 5 Cal.4th 228, 230 [19 Cal.Rptr.2d 520, 851 P.2d 802] (*Welch*) ["Such conditions are *routinely* imposed when the sentencing court determines, in the exercise of its discretion . . . ." (Italics added.)]; *People v. Patillo* (1992) 4 Cal.App.4th 1576, 1579 [6 Cal.Rptr.2d 456] [Per Werdegar, J., an AIDS education program was a reasonable condition imposed upon a seller of cocaine.]; *People v. Lindsay* (1992) 10 Cal.App.4th 1642, 1643-1645 [13 Cal.Rptr.2d 676] [Per Merrill, J., a condition that the offender totally abstain from alcohol was reasonably related to his drug offense and the need to cure his substance abuse.]; *People v. Tucker* (1995) 37 Cal.App.4th 1, 4-6 [44 Cal.Rptr.2d 1] [Per Parrilli, J., restitution of the appreciated value of embezzled property was a reasonable condition of probation.].) Under these authorities and the appropriate standard of review, appellant's argument cannot prevail.

■ *Ambrose* specifically involved denial of custody credits to a defendant for time spent in an alcoholic treatment program, and recognized that the propriety of a trial court's sentencing discretion was properly measured by determining it was reasonable to deny such credits, thereby benefiting a probationer by offering a greater incentive to succeed in substance abuse treatment and on probation if unable simply to manipulate the system by serving jail time in an ineffectual substance abuse treatment detour. "In fact, the denial of custody credit serves a valid rehabilitative purpose here: A defendant knows if he fails on probation, the trial court retains the power to

sentence him to a substantial term, unimpaired by a mechanical scheme unsuited to these circumstances. A defendant denied credit . . . for time spent in an alcoholic treatment program as a probationary condition is given a greater incentive to succeed in that program and as a probationer, because he cannot manipulate the court into allowing him to simply satisfy his sentence based upon time spent drying out at a ranch, rather than in jail or prison." (7 Cal.App.4th at p. 1925.)[3]

In addressing *Ambrose*, *Penoli* first observed that "as with other credits, the statutory entitlement to credit for time served is subject to waiver. This court had specifically so held, and *had refused to overturn a probation condition requiring a defendant to waive future credit* for time served in an alcohol treatment program, in *People* v. *Ambrose* [citation]." (46 Cal.App.4th at pp. 302-303, italics added.) The *Penoli* court then, however, failed to apply that division's prior *Ambrose* decision, asserting that had the trial court "merely cited" the *Ambrose* rule, "we would presume that in imposing such a [probationary] condition [a waiver of custody credits for time spent in a drug treatment program] it was exercising a sound discretion," with a resulting order that "might well be impervious to appellate challenge." (*Penoli, supra*, 46 Cal.App.4th at p. 303.)

Trial courts have never before been expressly required to cite the cases such as *Ambrose* which support their sentencing decisions; and no case we have found, save *Penoli*, expressly or implicitly suggests that a trial court's sentencing determination is or may be questioned or reversed for lack of such citation. Initially, then, we reject this suggestion from *Penoli*.

The ultimate *Penoli* rationale for finding error of the trial court was that "it appears from the record that in issuing the ruling [imposing the waiver of credits condition] the [trial] court failed to exercise the discretion vested in it by law." (46 Cal.App.4th at p. 302.) The *Penoli* trial court, however, aptly summarized the reasons for its action as follows: "[N]o public purpose is

---

[3]The other cases cited by the *Penoli* court in support of its result seem inapposite to this case—with the sole exception of the prior *Ambrose* decision, which the *Penoli* panel did not follow. (See 46 Cal.App.4th at pp. 303, 306.) We especially question the *Penoli* court's reliance (p. 306) on a prior Division Two decision, *In re Ronnie P.* (1992) 10 Cal.App.4th 1079, 1091 [12 Cal.Rptr.2d 875] (*Ronnie P.*), which seems irrelevant to the *Penoli* result, holding only that a juvenile court judge could not impose, and then stay, a commitment to the California Youth Authority. The *Penoli* trial court was not dealing with a juvenile, and was exercising its standard discretion to impose a condition of probation on an adult offender. We note further that at least three Courts of Appeal, including two divisions of our own district, refused to follow *Ronnie P.* in decisions which were issued years before the *Penoli* decision. (*In re Kazuo G.* (1994) 22 Cal.App.4th 1, 6-8 [27 Cal.Rptr.2d 155]; *In re Domanic B.* (1994) 23 Cal.App.4th 366, 370-373 [28 Cal.Rptr.2d 439]; *In re Chad S.* (1994) 30 Cal.App.4th 607, 610-613 [35 Cal.Rptr.2d 795].)

served by allowing credit for 'time served in a failed effort at rehabilitation . . . .' " (P. 303.) That summary accords with *Ambrose*.

The *Penoli* rationale was not posited on an objective analysis of whether the probationary condition in question was reasonably related to the offense and offender. The *Penoli* decision was instead predicated on remarks made by the trial court in that case, in colloquy with counsel, from which *Penoli* concluded the trial court failed to exercise judicial discretion in imposing the custody credits waiver condition on defendant, which required waiver of custody credits accruing under section 2900.5 for time spent in a residential drug treatment program. (*Penoli, supra*, 46 Cal.App.4th at pp. 303-305.)

*Penoli* correctly holds that courts must exercise discretion in sentencing, and we obviously agree with that principle. *Penoli* concluded the trial court failed to exercise its discretion in sentencing the individual defendant in that case. However, it failed to consider the full breadth, or form, of judicial discretion. It did not recognize that trial courts may exercise their discretion toward *classes* of similarly situated defendants, as well as toward individual defendants.

For example, a standard condition of probation that drug dealers or users waive their Fourth Amendment rights and submit to warrantless searches by police or probation officers, is not only appropriate but commonly applied. Another standard condition, that persons who commit offenses when intoxicated must abstain from the use or possession of alcohol and avoid places where alcoholic beverages are the principal item of sale, is also reasonable. It would be equally appropriate to require as a standard condition of probation that spousal abusers or stalkers not own or possess firearms or other deadly weapons. Persons convicted of cruelty to animals could be ordered not to own or possess pets. Consequently, convicted felons who are permitted to enter residential drug rehabilitation programs in lieu of imprisonment could be required to waive custody credits as a condition of probation. They are, after all, receiving a remarkable benefit; at *their* request, they are receiving treatment for their addiction at state expense and are not being confined in a penal institution.

The *Penoli* trial court explained in considerable and thoughtful detail its rationale for imposing the credits waiver as a probationary term—i.e., that no public purpose is served by crediting custody time to a probationer who fails drug program rehabilitation, and that (as *Ambrose* indicates) a substantial public purpose is served if the defendant must make a beginning choice on entering a drug rehabilitation program to successfully complete it or

suffer the adverse consequence of losing all credits for time spent in a failed program. (*Penoli, supra,* 46 Cal.App.4th at pp. 303-304.) In short, that sentencing court enunciated the commonsense conclusion reached in *Ambrose*: that a strong and powerful incentive for any probationer to successfully complete a drug rehabilitation program is imposed by such a condition; and that the trial court, consequently, viewed the case before it as one *requiring* a custody credits waiver as a condition to drug rehabilitative treatment in a probationary setting to encourage the probationer's success in that program.[4]

*Penoli* also found that the trial court's discussion of the provisions of section 2900.5 was to be deemed as an acknowledgment by the trial court that this " 'standard practice,' " admittedly inapplicable to an " 'unusual case,' " conflicted with the credits policy enunciated in that statute. (46 Cal.App.4th at p. 303.) Section 2900.5, however, does not proscribe *waiver*, as a probationary condition, of custody credits for time spent in a rehabilitation facility, as Division Two recognized in *Ambrose*. Section 1203.1 supports judicial imposition of a waiver of such credits as a probationary condition of the case at bench; and in its remarks, the trial court in *Penoli* seems simply to have implicitly and perceptively recognized that the "legislative policy" providing credits for time spent in a rehabilitative program does not override its discretion under section 1203.1 to impose a custody credits waiver condition, which discretion the trial court exercised because *Penoli* was not an " 'unusual case' " requiring a contrary decision. (46 Cal.App.4th at pp. 303-304.)

Another major difficulty we have with *Penoli* is this: Those trial judges who preside over sentencing calendars confront cases by the score on a daily basis. Colloquy between the trial courts and all counsel is frequently spontaneous and not infrequently drifts into the realm of philosophic arguments on behalf of defendants to be sentenced. *Penoli* clearly opens the way to urge on appeal the trial courts' abuses of discretion in sentencing, not because of the irrational relationship of probationary conditions imposed to crime and defendant, but because of judicial responses made in such harried circumstances by time pressured courts that impose sentences. *Penoli*, therefore, sends a chilling message to all sentencing judges: Refrain from all comments in hearings prior to imposing sentences, other than case citations and references to the sentencing rules, or risk reversal and remand. That message would truncate or invalidate criminal sentencing proceedings for the sake of

---

[4]The trial court, however, made it clear, while designating such probationary condition as a " 'standard practice' " (a phrase on which *Penoli* fastened and which it emphasized, despite its irrelevance (46 Cal.App.4th at p. 303)), that in an " 'unusual case,' " which *Penoli* obviously was not, no such condition would be imposed.

an empty formalism. Additionally, very few judges do not at some time in sentencing imperfectly express themselves, furnishing an additional ground under *Penoli* for claims of error in imposing probationary conditions, even if the conditions are objectively proper. The *Penoli* court wrongly focused on comments made in colloquy with counsel and the semantics of the court's decision, thereby making the process of sentencing rather than examination of the sentencing decision actually pronounced the determinate factor in appellate review.

We must reject and decline to follow *Penoli*. With respect, we believe the *Penoli* court reached an erroneous result by effectively substituting appellate court discretion for that conferred by statute on the trial court; i.e., by fastening on the trial courts a mechanical, highly questionable rule gleaned from an irrelevant reading of the record in that case involving a colloquy between the court and counsel, and by failing to follow binding authority from our Supreme Court. No California case except *Penoli* has ever held that a trial court abuses its discretion when it decides to impose a standard condition of probation under section 1203.1, which condition is reasonably related to the offense or the rehabilitation of the offender.

B.   *A Strong Rationale Exists Under California Authority for Imposition of Waiver of Custody Credits as a Standard Condition of Probation When a Defendant Accepts a Drug Treatment Program*

The number of drug offenses and convictions therefor in this state is staggering.[5] Attempting to stem this epidemic, the state's taxpayers supply enormous sums of money for rehabilitation of those convicted of such offenses. The successful rehabilitations these expenditures of public funds are designed to achieve are greatly and *reasonably* enhanced when those defendants who are granted probation to a drug rehabilitation program are required as a probationary condition to complete them successfully spurred by the guaranteed loss of custody credits for time spent in those programs if they fail. A compelling state interest in fostering *effective* treatment of those addicted to narcotics has long been recognized. (Cf. *In re Mabie* (1984) 159 Cal.App.3d 301, 308 [205 Cal.Rptr. 528].)

■   Against this well-known background, appellant contends imposition of a custody credits waiver for time served in a rehabilitative treatment facility may *not* be imposed as a routine or standard practice or " 'standard condition' " of probation.

---

[5]According to the California Department of Justice, there were 155,175 arrests for drug offenses in California in 1994, and 39,993 convictions for drug offenses. (Crime & Delinquency in Cal., 1994, Bur. of Crim. Information & Analysis, Refer. Table 20, p. 124, & Refer. Table 41, p. 157.)

Such credits may legally be waived; and if the defendant does not wish to accept such condition, probation may be rejected. A trial court does not abuse its discretion in imposing such a waiver as a standard and reasonable condition of probation in such cases, just as it requires probationers to waive other rights while on probation as a " 'standard practice' "—e.g., the right to consort with known criminals, the right to be free from search and seizure, the right to change residences without notification of probation authorities, all of which were imposed, inter alia, on appellant here—a " 'standard practice' " followed by many superior courts in this state through a pre-printed order of probation. It is well established that the trial courts may impose any "reasonable" conditions which they "may determine" would be "fitting and proper to the end that justice may be done . . . ." (§ 1203.1, subd. (j).) As our Supreme Court recently observed: "The sentencing court has broad discretion to determine whether an eligible defendant is suitable for probation and what conditions should be imposed. [Citations.]" (*Welch, supra*, 5 Cal.4th at p. 233.)

Venerable authority (*People* v. *Johnson* (1978) 82 Cal.App.3d 183, 187-188 [147 Cal.Rptr. 55] (*Johnson*)) also holds that a probationer who fails on probation, and relapses into old bad habits, may validly be required to waive all accrued custody credits as a condition of receiving a more lenient sentence in a less rigorous setting. As the *Johnson* court observed, the fact that the Legislature has specified in section 2900.5 that credits be awarded does not mean they cannot be waived when the imposition of such a waiver would benefit the offender and society. (*Johnson, supra*, 82 Cal.App.3d at pp. 187-188.)

We must, moreover, recognize that *any* " 'standard' " condition of probation is always subject to modification.[6] In unusual cases, the trial courts often exercise their discretion to modify such standard conditions. We reject appellant's contention we should follow the suggestion in *Penoli,* that the imposition of a custody credits waiver as a standard condition of probation when a defendant is admitted to a drug treatment program constitutes a violation of the trial court's duty, or an abuse of discretion.

The persuasive and commonsense logic of *Ambrose,* the wide discretion accorded sentencing judges by section 1203.1, and the present gigantic efforts of this state to support productive and effective drug rehabilitation programs, all lead to the conclusion that such waiver condition may be standardly imposed by the courts of this state in cases involving or implicating substance abuse, although courts retain the discretion to do otherwise

---

[6]For instance, a defendant ordered not to associate with known criminals, a " 'standard' " probationary condition, is frequently allowed to visit certain relatives who are thus categorized.

in the rare or exceptional case, as is the case in all other " 'standard' " probationary conditions under this section 1203.1 power. Such condition will uniformly thereby benefit the offender by providing a goad to succeed in the drug program, and benefit society by encouraging rehabilitation and an end to recidivism.

In sum, there is no flaw in the reasoning or action of the trial courts that impose such a standard condition of probation in such cases, benefiting both the defendants and the public. In deciding the ultimate issue of whether the trial court abused its discretion by imposing an unreasonable condition of probation, appellate courts are not restricted, as *Penoli* suggests, to consideration of comments made in colloquy with counsel or enunciated prior to sentencing.[7] Instead, we objectively examine the condition imposed, whether or not termed a " 'standard condition,' " to determine its reasonable relationship to the defendant and the criminal offense.

■ We hold that the proper test for evaluating a condition of probation imposed by a trial court, as a standard practice or otherwise, is simply whether the condition bears a reasonable relationship to the offense and the offender. If there is such a reasonable relationship, the trial court has not abused its discretion. That reasonable relationship clearly exists in the case at bench. We find no abuse of discretion by the trial court on that standard of review.

### C. The Failure to Object at Sentencing to a Probationary Condition Requiring Waiver of Custody Credits Also Waives the Issue on Appeal

■ There is also yet another and separate reason why appellant's challenge here must fail. Appellant did not object to the condition that she waive credits at the time of sentencing. Therefore, the matter may not properly even be raised for the first time on appeal. (*Welch, supra,* 5 Cal.4th at pp. 234-238.)

Appellant, however, again relies on a conflicting statement from *Penoli, supra,* 46 Cal.App.4th at page 302, footnote 2, which cited and apparently relied upon a line of authority stemming from *In re Bushman* (1970) 1 Cal.3d 767, 776 [83 Cal.Rptr. 375, 463 P.2d 727] (*Bushman*) in support of an observation that such a matter could be raised on appeal without any objection below. *Penoli* erred in its reliance on *Bushman,* which is no longer

---

[7]We are unable to discern from the facts *Penoli* recites how a failure to exercise judicial discretion or how a "preconceived determination applicable to *all* cases" (46 Cal.App.4th at p. 303, italics added) can be ascribed to the trial court imposing a probationary condition when the court made it clear that in an " 'unusual case' " it would forebear from imposing that condition.

authority for that proposition. In *Welch, supra,* 5 Cal.4th at page 236, our Supreme Court held, more than three years prior to *Penoli,* that *Bushman* does not apply here: "Defendant cites *In re Bushman* [citation] for the proposition that probationers need not object to proposed conditions at the time of sentencing in order to later challenge their validity on appeal or habeas corpus. While the cases have indeed interpreted *Bushman* this way, they are mistaken." Under *Welch,* the failure to object at the time of sentencing also waives a later appellate challenge to a condition of probation requiring a waiver of credits for time spent in a substance abuse program: "We therefore hold that failure to timely challenge a probation condition on '*Bushman* . . .' grounds in the trial court waives the claim on appeal." (5 Cal.4th at p. 237.)

### D. *Summary of Credits Waiver Issue*

While *Penoli* supports appellant's position, we decline to follow that case. In sum, we hold (1) that a trial court may impose as a standard and consistent condition of probation the waiver of custody credits for time served in a drug treatment program; and (2) that a defendant who does not object to that probationary condition when it is imposed, waives the right to later challenge its validity on appeal.

### E. *Claimed Ineffectiveness of Counsel*\*

. . . . . . . . . . . . . . . . . . . . . .

### III. DISPOSITION

The judgment of conviction is affirmed.

Haning, J., and Jones, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 30, 1997. Mosk, J., and Brown, J., were of the opinion that the petition should be granted.

---

\*See footnote, *ante,* page 771.