Filed 11/22/24  P. v. Dalbalcon CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>ANTONIO JOSEPH DALBALCON,<br><br>　　　Defendant and Appellant. | A169180<br><br>(Sonoma County<br> Super. Ct. No. SCR763965-1) |

Defendant Antonio Joseph Dalbalcon pleaded no contest to one count of possession of controlled substances in jail.  The trial court imposed a sentence to be followed by mandatory supervision and ordered restitution based on facts relating to a different count that was dismissed as part of the plea agreement.  On appeal, defendant contends:  (1) a portion of the trial court's restitution order is unsupported by a rational basis; (2) two of the written conditions of defendant's mandatory supervision are contrary to the court's oral pronouncement and must be excised; and (3) alternatively, one of these mandatory supervision conditions must be vacated as it is an improper delegation of judicial authority.

The People concede that one of the written conditions of mandatory supervision must be modified to conform to the court's oral pronouncement of

1

judgment. We accept that concession and will remand the matter for correction of the written condition. In all other respects, we will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The People charged defendant with receiving a stolen motor vehicle (Pen. Code, § 496d, subd. (a), count 1[1]) and possession of controlled substances (fentanyl and methamphetamine) in jail (§ 4573.6, subd. (a), count 2). The People further alleged a number of aggravating circumstances. Defendant pleaded no contest to the section 4573.6, subdivision (a) count, and admitted to an aggravating circumstance (Cal. Rules of Court, rule 4.421(b)(2)). Per the terms of his plea agreement, count 1 would be dismissed, but the court could consider the dismissed charge in determining the appropriate sentence and restitution. (*People v. Harvey* (1979) 25 Cal.3d 754.)

In accord with the plea agreement, the trial court sentenced defendant to the upper term of four years pursuant to section 1170, subdivision (h), ordering that after 18 months in custody, the remainder of the term would be suspended and defendant would be placed on mandatory supervision. After a subsequent hearing in which the court ordered restitution, defendant filed this appeal.

## DISCUSSION

### A. Victim Restitution

Defendant contends there was no rational foundation for ordering him to pay $1,100 in restitution for lost wages. We set out some additional facts before examining this claim.

---

[1] All further undesignated statutory references are to the Penal Code.

### 1. *Additional Facts*

Count 1 involved a vehicle that was stolen from an elderly victim. At the sentencing hearing, defendant stipulated to paying $430 in restitution to the victim for the cost of towing and storage. But defendant objected to and requested a hearing to address a request for $1,177.54 in restitution for the victim's adult son.[2] The trial court reserved its ruling on this portion of victim restitution and set a separate restitution hearing.

At the restitution hearing, the prosecutor submitted evidence, which was admitted without objection, concerning the contested amount. In short, the son of the victim submitted a letter entitled "Statement of Lost Wages and Cost to Travel to Sonoma County to Retrieve Stolen Jeep" which stated: "I am the sole owner of a one-man shop, all work and labor performed only by me at my place of business. I work a minimum of 6 days per week, 10 hours per day. My hourly rate is $110.00 per hour. [¶] On Friday, June 2, 2023 I lost a full day of work to travel to Sonoma County to pick up a 1946 Willys Jeep CJ2A and transport it to a safe and secure location: [¶] 10 hours of work at $110.00 per hour $1,100.00. [¶] Used my work vehicle and car trailer traveling from Ukiah to Sonoma County Sheriff's Dept: 55 miles at 65.5 cents per mile. $36.02 [¶] Mileage from Sonoma County Sheriff's Dept to Cream's Dismantling and Towing 3621 Copperhill Ln Santa Rosa 5.7 miles. $3.73 [¶] Mileage from Cream's Dismantling and Towing to Empire Lane in Ukiah, CA 57.5 mile $37.79 [¶] Grand Total: $1,177.54[.]" (Capitalization omitted.)

Defense counsel objected to the request for $1,177.54, arguing there was no proof the victim whose vehicle was stolen ever paid this amount to his son. Defense counsel also argued the victim's son was claiming an

---

[2] Both of these requested restitution amounts were included in the probation report.

3

unreasonable amount of time, there was no proof he had to work on the day he chose to do the task, and the request was neither sworn under penalty of perjury nor supported by any additional information.

The prosecutor indicated he was not in a position to explain why the victim's son chose to pick up the vehicle on a specific day, or whether it took him a full 10 hours to complete the task, but argued he was taking the statement "at face value."  The trial court ruled that it had no reason to find the request unreasonable or to dispute it, and that the victim's son fell within the definition of being a victim insofar as he suffered out-of-pocket expenses due to defendant's commission of a crime.  The court ordered defendant to pay the son $1,177.54 in victim restitution.

### 2. *Analysis*

Article I, section 28, subdivision (b)(13), of the California Constitution establishes that victims have a right "to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer" and that restitution shall be ordered from every convicted wrongdoer when a victim suffers a loss.  Section 1202.4 implements this constitutional provision. (*People v. Smith* (2011) 198 Cal.App.4th 415, 431.)  Subdivision (a)(1) of section 1202.4 declares:  "It is the intent of the Legislature that a victim of crime who incurs an economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime." For purposes of the statute, "victim" is broadly defined and includes, inter alia, specified family members such as a child of a victim "who has sustained economic loss as the result of a crime."  (§ 1202.4, subd. (k)(3)(A) ["victim" also includes a parent, grandparent, and grandchild of a victim].)

Section 1202.4, subdivision (a)(3), provides that courts must order victim restitution "in accordance with subdivision (f)."  In turn, subdivision (f)

4

of section 1202.4 states: "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, *based on the amount of loss claimed by the victim* or victims *or any other showing to the court*." (Italics added.) Subdivision (f)(3) of section 1202.4 requires, to the extent possible, that the restitution order constitute "a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct," including lost wages. (§ 1202.4, subd. (f)(3)(D).)

"Section 1202.4 does not, by its terms, require any particular kind of proof." (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542–1543 (*Gemelli*).) The weight of authority holds that "[a] victim's statement of economic loss is prima facie evidence of loss." (See *People v. Grandpierre* (2021) 66 Cal.App.5th 111, 115 (*Grandpierre*); *People v. Weatherton* (2015) 238 Cal.App.4th 676, 684; *Gemelli*, at pp. 1542–1543; *People v. Pinedo* (1998) 60 Cal.App.4th 1403, 1406–1407.) "Restitution hearings are intended to be informal" (*Weatherton*, at p. 684), and a victim's claim need not be substantiated through particular testimonial evidence or documentation (*In re S.S.* (1995) 37 Cal.App.4th 543, 547, fn. 2). For example, a trial court is entitled to accept as prima facie evidence of loss a property owner's statement made in a probation report about the value of stolen or damaged property. (*Weatherton*, at p. 684.) Courts have also accepted a victim's unsworn written itemization of losses as prima facie evidence of the loss. (E.g., *S.S.*, at pp. 545, 548, fns. 1–2 [noting no apparent authority requiring a victim to "supply a sworn proof of loss or detailed documentation of costs and expenses"]; *Gemelli*, at pp. 1544–1545.) To rebut a prima facie case, the

defendant must offer contrary information showing "the amount claimed is excessive." (*Weatherton,* at p. 684; *Pinedo,* at pp. 1406–1407 [probation report requested restitution award of $7,000 to cover attorney fees "and it was up to appellant to demonstrate this amount was unreasonable"].)

"The standard of proof at a restitution hearing is preponderance of the evidence," and generally "[w]e review a victim restitution order for abuse of discretion." (*Grandpierre, supra,* 66 Cal.App.5th at p. 115.) "When . . . the gist of the appellant's argument is that the evidence before the trial court was insufficient to establish the amount awarded, we review for substantial evidence." (*In re Travis J.* (2013) 222 Cal.App.4th 187, 203.)

Notably, neither side disputes that the victim's son was himself a victim for purposes of restitution (§ 1202.4, subd. (k)(3)(A)), or that he submitted a written statement explaining and itemizing his claimed economic loss. Specifically, the son stated that his hourly rate is $110.00 per hour, that he works 10-hour days, and that he lost a full day of work on Friday, June 2, 2023 by carrying out the tasks of driving to Sonoma County to retrieve the stolen vehicle and transporting it to a safe and secure location in Ukiah. Accompanying the statement is a receipt from the towing company showing that the elderly victim paid towing and storage fees in cash at 4:41 p.m. that day, and that the victim accompanied the son in retrieving the vehicle in the late afternoon. The trial court was entitled to accept this as prima facie evidence of the son's activities in incurring his loss, and contrary to defendant's suggestion, case law did not require testimony or a supplemental statement to further substantiate the loss.

Defendant argues the claimed time of 10 hours to complete the task was not credible on its face given that the total drive was 118.4 miles. But as the People point out, defendant's contention is based simply on the mileage

traveled without accounting for potential traffic, time spent at the sheriff's office, time for completing paperwork and retrieving the vehicle at the towing company with the victim, or other conceivable factors that might have prolonged the task at hand such that it consumed a whole day of work. We cannot agree the 10 hours claimed by the son was facially incredible or unreasonable as a matter of law.

Defendant also argues it was an abuse of discretion to credit the son's unsworn statement that his work rate is $110.00 per hour. Despite acknowledging cases that have affirmed restitution orders including lost earnings based solely on a victim's statement, defendant claims that "[w]hen a victim claims an unusually high hourly wage, to rationally support the awarded wage, the superior court must require confirmation of the hourly rate with a W-2, 1099, pay stub, contract or invoice for professional services which included an hourly compensation rate, or income tax form." We are not persuaded.

*Gemelli*, *supra*, 161 Cal.App.4th 1539, is instructive. In that 2008 decision, the victims were the owners of a restaurant who claimed labor costs at either $25 or $50 per hour for repairing or replacing items following the defendant's burglary of their restaurant, and they submitted an unverified handwritten list itemizing their losses. (*Gemelli*, at p. 1544.) The Court of Appeal described the list as "detailed and facially credible," and held it was sufficient to constitute a prima facie showing of economic losses. (*Ibid*.) Though the defendant disputed the losses by arguing the restaurant's owner performed the repairs himself, *Gemelli* reasoned: "Even if the owner did all of the repairs himself rather than hire someone else to do them, his time had value. There was nothing in defendant's testimony to even suggest the hourly rate or the time spent for each repair was in any way excessive and

7

could therefore not be the actual cost of repairing the property. As a result, we cannot disagree with the trial court's conclusion defendant did not present any credible evidence to rebut any of the repair items." (*Id.* at pp. 1544–1545.)

Here, defendant offered no evidence or information whatsoever suggesting the son's claimed hourly rate was unusually high or excessive. There is nothing in the record that suggests the defense ever tried to contact the son or investigate his claimed losses. This is so despite the fact that the trial court offered defense counsel additional time to develop evidence to challenge the claimed amount. On this record, the trial court did not abuse its discretion in determining that defendant failed to rebut the son's prima facie case. (*Gemelli, supra*, 161 Cal.App.4th at p. 1545.)

In sum, we reject defendant's challenge to the restitution order.

**B. Terms of Mandatory Supervision**

Defendant next contends that two of the conditions in the written form setting out the conditions of his mandatory supervision should be excised because they are contrary to the trial court's oral pronouncement of judgment.

" 'Rendition of judgment is an oral pronouncement.' " (*People v. Mesa* (1975) 14 Cal.3d 466, 471.) In the event of a discrepancy between the oral pronouncement of the court and the minute order or the abstract of judgment, the oral pronouncement controls. (*People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2 [minute orders]; *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [abstracts of judgment].)

Here, the trial court orally ordered defendant to "possess no dangerous or deadly weapons" as a condition of his mandatory supervision. The court also separately ordered that as a felon, defendant was not to own, use,

possess, or have custody or control over any firearms, ammunition, or ammunition feeding devices. But the written condition appearing on defendant's mandatory supervision form simply stated: "Possess NO weapons."

Defendant challenges the written term as being contradictory to the trial court's oral pronouncement, and the People concede the inconsistency. We agree and will remand the matter for correction of the written condition to conform to the court's oral pronouncement. And because the minute order for the sentencing hearing reflects the same condition as the written form, we will also order correction of the minute order.

The trial court also orally ordered defendant to "participate in programs of assistance and counseling targeting his specific respect of substance abuse as directed by his probation officer."[3] The court noted defendant's history of fentanyl overdoses and stated, "No one here wants to see you kill yourself. You've got to find a way." Separately, the court orally ordered defendant to "seek and maintain employment or enroll in an educational program." In the written mandatory supervision form, the associated condition stated that defendant "is ordered to participate in and complete any programs of assistance or counseling as directed by probation: educational, vocational, financial, medical, psychiatric, psychological, domestic violence, alcohol and /or drug program as directed." Above this written condition is a line pointing to it and the handwritten words "substance abuse."

---

[3] The sentencing minute order is substantially similar to the trial court's oral pronouncement as it states: "Participate and complete programs of assistance and counseling as directed by Probation Officer. Do not leave the program without prior written consent—for substance abuse."

Defendant contends the only programs the trial court orally ordered him to complete were substance abuse programs and counseling, and employment or educational programs. In defendant's view, the court did not orally order his participation in financial, medical, psychiatric, psychological, or domestic violence programs.

The People respond that the written condition requiring defendant's completion of "programs specifically 'for substance abuse' " is consistent with the trial court's oral pronouncement. We agree on this score. In its oral pronouncement, the court plainly ordered defendant to participate in "programs of assistance and counseling targeting his . . . substance abuse." And on the written form, the handwritten annotation "substance abuse" is reasonably understood as modifying and limiting the printed form referencing multiple possible program categories (e.g., educational, vocational, financial, medical, psychiatric, psychological, domestic violence). Thus, the written terms of supervision are reasonably understood as allowing the probation department to require "programs of assistance and counseling" only to the extent such programs reasonably address defendant's substance abuse. Construed in this manner, we do not find the written condition inconsistent with the oral pronouncement, and we reject defendant's request to strike it on that ground.

Defendant attacks this latter written condition on the alternative ground that it constitutes an improper delegation of judicial authority to the probation department. We are not persuaded.

Article III, section 3, of the state Constitution provides, "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." " 'Separation of powers does not mean an

10

entire or complete separation of powers or functions, which would be impracticable, if not impossible.' " (*In re D.N.* (2022) 14 Cal.5th 202, 212.) " 'The correct principle deducible from the better-reasoned cases dealing with the separation of powers seem[s] to be that even the primary function of any of the three departments may be exercised by any other governmental department or agency so long as (1) the exercise thereof is incidental or subsidiary to a function or power otherwise properly exercised by such department or agency, and (2) the department to which the function so exercised is primary retains some sort of ultimate control over its exercise, as by court review in the case of the exercise of a power judicial in nature.' " (*In re Danielle W.* (1989) 207 Cal.App.3d 1227, 1236.)

The general rule is that "a court may dictate the basic policy of a condition of probation, leaving specification of details to the probation officer." (*In re Victor L.* (2010) 182 Cal.App.4th 902, 919.) Although an order cannot be entirely open ended, "[t]he court may leave to the discretion of the probation officer the specification of the many details that invariably are necessary to implement the terms of probation." (*People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1358–1359.) As when analyzing probation conditions, we analyze conditions of mandatory supervision in context and use common sense. (*People v. Rhinehart* (2018) 20 Cal.App.5th 1123, 1129.)[4]

---

[4]     While mandatory supervision is a distinct form of supervision from probation, we conclude the case law concerning assessment of probation conditions and improper delegation apply here. (*People v. Bryant* (2021) 11 Cal.5th 976, 983, 985–987 [concluding "*Lent's* case-by-case analysis" concerning the reasonableness of probation conditions applies to conditions of mandatory supervision and indicating, "in general, the conditions of probation and mandatory supervision are . . . intended to be handled in the same way"]; see § 1170, subd. (h)(5)(B) ["During the period of mandatory supervision, the defendant shall be supervised by the county probation officer in accordance with the terms, conditions, and procedures generally applicable

11

Constitutional challenges to mandatory supervision conditions are reviewed de novo. (*People v. Brand* (2021) 59 Cal.App.5th 861, 867.)

We find two cases—*People v. Penoli* (1996) 46 Cal.App.4th 298 (*Penoli*), and *People v. Smith* (2022) 79 Cal.App.5th 897 (*Smith*)—helpful to our analysis and will address them in order.

In *Penoli*, *supra*, 46 Cal.App.4th 298, a different division of this court held that a probation condition granting the probation department authority to unilaterally select which residential drug rehabilitation program the defendant was to participate in was not an unlawful delegation of judicial authority. (*Penoli*, at pp. 307–308, criticized on other grounds in *People v. Torres* (1997) 52 Cal.App.4th 771, 776–778.) *Penoli* reasoned that such a delegation did not place the defendant completely at the mercy of the probation department, and the defendant could seek "judicial intervention— by moving to modify the probation order . . . —if and when the probation officer seeks to exercise the delegated authority. (See § 1203.3.)" (*Penoli*, at p. 308.) *Penoli* also highlighted the practicalities surrounding the issue: "any attempt to specify a particular program at or prior to sentencing would pose serious practical difficulties. The trial court is poorly equipped to micromanage selection of a program, both because it lacks the ability to remain apprised of currently available programs and, more fundamentally, because entry into a particular program may depend on mercurial questions of timing and availability." (*Ibid.*)

In *Smith*, *supra*, 79 Cal.App.5th 897, another division of this court considered a probation condition requiring the defendant " 'to participate in any treatment/therapy/counseling program, *including residential*, as directed

---

to persons placed on probation for the remaining unserved portion of the sentence imposed by the court"].)

by the probation officer.' " (*Smith*, at p. 902, italics added.) *Smith* found an improper delegation of authority because the condition explicitly delegated to the probation officer the discretion to require the defendant's participation in residential treatment. (*Id.* at p. 903.) In reaching this conclusion, *Smith* relied on federal case law holding that a condition that affects a significant liberty interest, such as one requiring residential treatment, must be imposed by a trial court. (See, e.g., *United States v. Matta* (2nd Cir. 2015) 777 F.3d 116, 123; *United States v. Mike* (10th Cir. 2011) 632 F.3d 686, 695–696 (*Mike*).) *Smith* remanded the case to the trial court "with directions either to strike the words 'including residential' from the treatment condition or to specify that the court requires [the defendant] undergo residential treatment," but affirmed the judgment in all other respects. (*Smith*, at p. 905.)

Here, the trial court ordered defendant's participation in programs and counseling targeting his substance abuse, while leaving the probation officer to oversee the details. Applying the principles in *Penoli*, *supra*, 46 Cal.App.4th 298, and *Smith*, *supra*, 79 Cal.App.5th 897, we cannot say this was an improper delegation of judicial authority.

Finally, defendant requests that we remand for resentencing and order the trial court to indicate whether it recommends a residential or outpatient substance abuse program. (See *Smith*, *supra*, 79 Cal.App.5th at p. 905.) In declining to do so, we recognize that, due to its open-ended language, the challenged condition could be read as delegating discretion to the probation officer to require defendant's participation in a residential treatment program. But after *Smith*, we think a trial court's order for substance abuse programming must be construed as requiring only out-patient programming unless the order specifically authorizes residential treatment. (See *id.* at

13

pp. 902–903, 905.)  This illustrates the principle that allows courts "to construe [non-specific, all-encompassing conditions] in a manner that does not make them infirm."  (*Mike*, *supra*, 632 F.3d at p. 696.)  In other words, we construe the court's written order as not delegating to the probation officer the authority to subject defendant to residential treatment.  Should the probation department determine residential treatment is advisable for this defendant, the power to order such treatment ultimately rests with the trial court.  (See § 1203.3.)

## DISPOSITION

We remand the matter and order the trial court to correct the written form setting out the conditions of defendant's mandatory supervision and the minute order for the October 17, 2023 sentencing to conform with the court's oral pronouncement at sentencing that defendant is to "possess no dangerous or deadly weapons."  In all other respects, the judgment is affirmed.


_____
Fujisaki, J.


WE CONCUR:


_____
Tucher, P.J.


_____
Petrou, J.


*People v. Dalbalcon* (A169180)


14