Filed 8/25/20  In re Nicholas P. CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re NICHOLAS P., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>NICHOLAS P.,<br><br>     Defendant and Appellant. | A158426<br><br>(Contra Costa County Super. Ct. No. J18-01060)<br><br>**ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT]** |

**BY THE COURT**:

It is ordered that the opinion filed herein on July 31, 2020, be modified as follows:

On page 2, in the final sentence of the first full paragraph, replace "treatment programs" with "**residential programs**".

On page 5, in the last sentence of the first full paragraph, replace "as he previously left other programs" with "**based on his history with other programs**,".

On page 5, in the second sentence of the last paragraph, replace "She" with "**He**".

1

On page 12, in the last sentence of the last full paragraph, replace "residential treatment programs" with "**residential programs**."

On page 13, in the first paragraph, replace "and in the course of his psychological assessment he admitted to three suicide attempts by intentional overdoses on controlled substances" with "**the most recent of a number of self-harm efforts by him.**"

On page 15, in the first full paragraph, third sentence, replace "dismissed" with "**released**".

There is no change in judgment.


Dated: _____                    _____

                                                            Kline, P.J.

Filed 7/31/20  In re Nicholas P. CA1/2 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re NICHOLAS P., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>NICHOLAS P.,<br><br>        Defendant and Appellant. | A158426<br><br>(Contra Costa County Super. Ct. No. J18-01060) |

Nicholas P., 17 years old at the time of the subject incident, appeals from the juvenile court's disposition order, issued under Welfare and Institutions Code section 602, et seq., arguing that the court abused its discretion by committing him to the Youthful Offender Treatment Program (YOTP), impermissibly delegated to the probation department its authority to determine the length of his  commitment, ordered him subject to a constitutionally overbroad probation condition regarding his possession and use of knives, erroneously imposed a maximum commitment term of five years, and miscalculated his custody credits.  We conclude the court did not abuse its discretion nor impermissibly delegate its authority, but we agree

1

with Nicholas that the probation condition, the commitment order and his custody credits should be modified.

## BACKGROUND

### I.

### *Events Prior to the Present Offenses*

Nicholas repeatedly had come under the jurisdiction of the juvenile court before he committed the offenses involved in the present case. In 2015, the juvenile court sustained allegations that he had committed misdemeanor second degree commercial burglary and misdemeanor petty theft (later reduced to misdemeanor shoplifting) and adjudged him an indefinite ward of the court. In 2017, after he violated probation twice by testing positive for marijuana, the court ordered him to juvenile hall and later placed him on home supervision. In July 2017, the court sustained a drug possession count in a supplemental petition and ordered Nicholas placed out of home. He subsequently entered three different treatment programs and was terminated from each after only a brief stay.

Nicholas' substance abuse continued. In July 2018, he ingested an unknown substance, hallucinated and was found to pose a danger to himself. He was held involuntarily for psychiatric evaluation under Welfare and Institutions Code section 5150[1] (section 5150), one of "numerous" such holds since 2014. He spent seven days in the hospital, five of which were in intensive care, and then stayed in a voluntary residential drug treatment facility but was released early for poor behavior and given a completion certificate. In September 2018, the court terminated Nicholas' wardship unsuccessfully.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

In November 2018, Nicholas' father (father) called police about Nicholas vandalizing the family home. Responding police observed Nicholas engage in erratic and aggressive behavior, which led to him being placed on another psychiatric hold under section 5150. A wardship petition was filed alleging drug offenses, and in March 2019 the court again adjudged him a ward, ordered that he be placed on home supervision and required him to successfully complete Kaiser Permanente's out-patient chemical dependency treatment program.

On June 17, 2019, Nicholas admitted to violating probation by failing to submit to three drug tests. Then, on June 20, 2019, after father's report that Nicholas had apparently inflicted cuts on his own chest and wrist, he was placed on another involuntary psychiatric hold under section 5150. On June 30, 2019, father reported that Nicholas was threatening to cut himself and his ankle monitor with a knife, and responding police observed blood on Nicholas' shirt and wrists, leading to another psychiatric hold under section 5150.

At the July 2019 disposition hearing on this new petition, the court ordered Nicholas to continue in home supervision and in the Kaiser outpatient program and to enter a dual diagnosis residential treatment program that could treat his substance abuse and mental disorders,[2] as recommended by Kaiser, if the probation department and his mother could find one for him. Subsequently, Nicholas was approved by the Muir Wood dual diagnosis treatment program in Petaluma, California but would not agree to attend; also, his mother was still working to obtain insurance coverage to pay for the program.

---

[2] Prior to the present case, Nicholas was diagnosed as suffering from major depressive, anxiety, attention deficit hyperactivity, post-traumatic stress and oppositional defiant disorders.

## II.

### *The Present Offenses*

On August 8, 2019, the Contra Costa District Attorney filed a notice of probation violation and a supplemental wardship petition alleging offenses that were the basis for Nicholas' tenth referral to the probation department. The petition alleged that on August 6, 2019, Nicholas, committed assault with a deadly weapon in violation of Penal Code section 245, subdivision (a)(1) (count 1); assault by means of force likely to produce great bodily injury in violation of Penal Code section 245, subdivision (a)(4) (count 2); and felony vandalism in violation of Penal Code section 594, subdivision (b)(1) (count 3).

The probation department later reported that, according to police, on August 6, 2019, Nicholas and friends were at his house when one friend accused him of stealing marijuana. Nicholas became angry and engaged in a physical altercation with the friend inside the house. As the friend left the house, Nicholas ran towards him with "a one foot in length kitchen knife" in his hand. Nicholas lunged at him with the knife, close enough to force the friend to jump away, and stabbed the friend's vehicle, denting it. After the friend got in the vehicle, Nicholas threw rocks at it, denting it further.

When the police arrived, Nicholas told them that he had pulled out a knife when the friend would not leave his property. He was arrested and, after he repeatedly banged his head against the metal divider in the police car, placed in the "WRAP restraint system" and taken to juvenile hall.

## III.

### *The Detention Hearing*

The juvenile court convened a detention hearing on August 9, 2019. Nicholas' counsel denied all allegations and requested that the court release

4

Nicholas to his mother so he could be taken on Monday, August 12, to the Muir Wood dual diagnosis treatment facility to reside there and participate in a 60- to 65-day program, which the probation department also recommended in its disposition report. The court was concerned with the severity of the present offenses and that this would be a "pre-contest release" (since jurisdictional and dispositional rulings were yet to be made) that would leave the case still to be resolved. It also lacked substantial information on the Muir Wood program and wanted to hear more from Nicholas' probation officer, who could not attend the hearing. Therefore, the court continued the detention hearing to August 12 and ordered Nicholas' probation officer to be present. It said it was interested in the Muir Wood program "[i]f we can reach a point where we feel a lot better about . . . how he's going to be supervised while he's there to make sure he doesn't leave . . . ."

At the August 12 detention hearing, Nicholas pleaded no contest to counts 2 and 3. The court sustained those counts, dismissed count 1 and dismissed the probation violation petition. Nicholas' probation officer, who attended the hearing, recommended that he be committed to a locked facility because she thought he would not successfully complete Muir Wood and that she would not be able to properly supervise him there. She was concerned that Nicholas would leave Muir Wood as he previously left other programs, putting himself and others at risk.

Nicholas' counsel argued Muir Wood could address both Nicholas' mental health and substance abuse issues but could only hold a spot for Nicholas until the next afternoon. She highlighted that Nicholas would be under video surveillance in a 22-bed facility with "pretty much a one-to-one staff ratio," wear an ankle monitor and be the subject of weekly updates, and that the program would immediately contact the sheriff if Nicholas were to

leave. Nicholas stated that a locked program was dangerous to his mental health and that he wanted the opportunity to participate in the Muir Wood program.

The court stated that Nicholas needed to be detained because he became dangerous when he was under the influence, and that it was in his interest to place him where it could be ensured that he remained safely clean, sober and crime-free. It indicated that probation might be able to make persuasive recommendations about a residential program at a later time but thought it would be putting Nicholas at risk of failure if it permitted him to go into a treatment program at that time. It denied him release to enter Muir Wood, set a disposition hearing and ordered a mental health assessment.

## IV.

### *Reports and Recommendations Prior to the Disposition Hearing*

The probation department's dispositional report of August 23, 2019, reviewed Nicholas' juvenile wardship and treatment history, which we have already recounted. The department reported Nicholas had been interviewed. He told the department that he had ingested five or more Xanax pills and smoked unknown amounts of marijuana and a mixture of fentanyl and heroin on the day of the incident and only recalled " 'bits and pieces' " of it, but acknowledged fighting with his friend in his house, and then grabbing a knife. He acknowledged being addicted to drugs and to being mentally ill, said the serious nature of his offenses had shown him he needed to complete a rehabilitation program, and said he did not like juvenile hall and thought it was "making him crazy" to be there, including because some people there scared him.

6

The department further reported that Nicholas was attending school at the hall after previously failing to enroll for the current school year. Furthermore, he had admitted to an "extensive history of illegal substance abuse including marijuana, cocaine, methamphetamine, heroin, LSD, psilocybin mushrooms and various prescription drugs, to include Xanax, Hydrocodone, Klonopin, Codeine, Promyethazine, Fentanyl and OxyContin," and to "experimenting with alcohol."

The department also summarized two recent juvenile hall incident reports. The first report indicated that when he first was admitted to juvenile hall on the day of the incident, he engaged in aggressive behavior and tried to run headfirst into a glass door, stated that he wanted to kill himself and had to be restrained. The second report indicated that about a week later, juvenile hall staff observed bruising, lines and scratches on his neck. Nicholas denied hurting himself and was placed on suicide watch.

The probation department further reported that a mental health assessment had been conducted and that Nicholas received "a current primary diagnosis of Polysubstance Abuse, with a secondary diagnosis of Adjustment Disorder." The assessing doctor recommended that a more thorough diagnostic battery be conducted by a treating psychologist to verify Nicholas' past diagnoses. The doctor believed Nicholas could benefit from inpatient substance abuse treatment in conjunction with individual and family counseling, anger management, emotional education, coping skills development and social skills development. He thought Nicholas appeared to have very little in the way of coping skills, making it difficult for him to identify his feelings and effectively manage his symptoms, leading to his substance use. Additional work focusing on past trauma would also be beneficial. The doctor thought that, with treatment and support, it was

7

possible for Nicholas to gain sufficient control over his mental health and substance abuse; however, he needed inpatient detoxification and treatment, specialty mental health services, continuing psychiatric medication support, and structure and consistency, in order to be successful in the community.

Using a standard evidence-based assessment, the department classified Nicholas as having a high risk of re-offense. He had been screened for placement in the Department of Juvenile Justice, residential placement, the Orin Allen Youth Rehabilitation Facility (Orin Allen) and YOTP. Although he met the criteria for residential placement, the department did not think it appropriate because his "use of weapons, level of violence, severe noncompliance, historic refusal to participate in treatment, and his past placement terminations during his previous wardship, indicate he would pose a risk to the foster care environment." For these same reasons, the department concluded the open setting of Orin Allen was not appropriate either. It recommended that he be committed to YOTP because "[Nicholas] clearly has substance abuse issues and long standing mental health issues that need to be addressed. Additionally, the danger he poses to community members when he is under the influence is alarming. Though the YOTP's resources are limited in regard to substance abuse treatment, he will be provided the 39 lesson cognitive behavioral intervention treatment class for substance abuse. . . . Also, [Nicholas] would benefit from the other cognitive restructuring treatment classes in YOTP, such as Aggression Replacement Training (ART) and Thinking for a Change (T4C). Additionally, he will participate in individual counseling with a mental health therapist, followed by family therapy after his release. . . . Since he is a threat to community safety, and given his prior history, it appears best he receive treatment while in an institutional setting."

The department further stated, "[Nicholas'] behavior has escalated to a level where he is placing the safety of himself and others at risk and it is apparent [he] is at risk of potentially harming himself or someone else, if he doesn't receive extensive and intensive treatment immediately. [¶] At this time, it appears vital that [Nicholas] be placed in a secure institutional setting, where he will be forced to refrain from illegal substances, where he will be able to participate in substance abuse treatment and where he can receive individual mental health counseling."[3] The department also recommended that, in light of Nicholas' mental health assessment, he "is in need of a more in-depth psychological assessment."

A letter signed by a Kaiser therapist to Nicholas' parents dated August 28, 2019, was also submitted to the court before the disposition hearing. It states that Kaiser "has recommended for [Nicholas] to attend, participate and complete a dual diagnosis program to address both his substance use disorder and his mental health disorder. [Nicholas] has been referred to several programs through Kaiser. He has been discharged early from one program and has declined others. [Nicholas] will need an updated evaluation to determine if Kaiser has the appropriate programs for him."

## V.

### *The Disposition Hearing*

At the disposition hearing on September 4, 2019, Nicholas' counsel argued for commitment to a dual diagnosis treatment program. However, counsel could not identify a program that was then available to Nicholas. Counsel noted that Muir Wood had previously accepted Nicholas, and there

---

[3] At the end of the report, the department stated, "A review of the family's dynamics indicate that out of home placement is not necessary at this time." This sentence appears to have been in error because the department clearly recommended that Nicholas be placed in YOTP.

9

was some discussion about a continuance that counsel ultimately did not pursue.

The court indicated it would commit Nicholas to YOTP because "nothing is set up to ensure that he won't do what he's done in the past and leave the program . . . ." It thought YOTP gave him "the best chance for success" and would be best for society as well. The court was also concerned that Nicholas continued to display the manipulative behaviors of an addict, such as when he said at the hearing, "[I]f I have a seizure at YOTP and I do die, for instance, or something does happen, you get brain dead, that it is on the Court." The court ordered Nicholas to YOTP for a maximum term of five years, or age 21, with 29 days credit for time served, and to successfully complete all phases of YOTP. It set a review hearing to take place in four months regarding Nicholas' YOTP performance.

Nicholas filed a timely notice of appeal.

## DISCUSSION

## I.

### *The Court Did Not Abuse Its Discretion in Committing Nicholas to YOTP.*

Nicholas argues the juvenile court abused its discretion in committing him to YOTP because he required extensive and intensive treatment for his dual diagnosis condition that he could not receive at YOTP, which he characterizes as a behavior modification program designed for chronic-offending, criminally sophisticated wards, unlike him. He further argues the juvenile court unreasonably rejected his request to be placed in the Muir Wood program at the detention hearing. The People argue the record supports the court's finding that Nicholas required commitment to a locked facility like YOTP because he posed a serious risk of danger to himself and the community, and because Nicholas could benefit from the mental health

10

and substance abuse treatment that was available at YOTP.  We agree with the People.

**A. Legal Standards**

A juvenile court has broad discretion in determining the proper placement for a juvenile ward.  (*John L. v. Superior Court* (2004) 33 Cal.4th 158, 183; see also *In re W.B.* (2012) 55 Cal.4th 30, 44-45 [discussing the various options available to the court]; §730.)  We review a juvenile court "commitment decision for abuse of discretion, indulging all reasonable inferences to support the juvenile court's decision."  (*In re Angela M.* (2003) 111 Cal.App.4th 1392, 1396.)  We review the court's factual findings for substantial evidence (*In re Teofilio A.* (1989) 210 Cal.App.3d 571, 579), which is evidence that is " 'reasonable in nature, credible, and of solid value.' " (*People v. Francis A.* (2019) 40 Cal.App.5th 399, 405.)

Juvenile wards "shall, in conformity with the interests of public safety and protection, receive care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances."  (§ 202, subd. (b); *In re Ronnie P.,* (1992) 10 Cal.App.4th 1079, 1087-1088.)  " ' "[O]ne of the primary objectives of juvenile law is rehabilitation, and the statutory scheme contemplates a progressively more restrictive and punitive series of dispositions starting with home placement under supervision, and progressing to foster home placement, placement in a local treatment facility, and finally placement at the [Division of Juvenile Facilities] . . . ." ' '  A juvenile court may properly consider a 'restrictive commitment as a means of protecting the public safety.' " (*In re Carlos J.,* (2018) 22 Cal.App.5th 1, 5-6.)  The court must consider the totality of the minor's circumstances, including "(1) the age of the minor, (2)

11

the circumstances and gravity of the offense committed by the minor, and (3) the minor's previous delinquent history."  (§ 725.5.)

## B. Analysis

### 1. *The Court's Disposition Order Committing Nicholas to YOTP*

The juvenile court did not abuse its discretion in committing Nicholas to YOTP.  The court could reasonably decide at disposition to order Nicholas to YOTP because of his numerous juvenile offenses, probation violations and failures in other less restrictive programs, the serious and violent nature of his current offense, his suicidal tendencies, the probation department's concerns about monitoring him in an unlocked facility, the benefits Nicholas would receive from the YOTP program, and the lack of an available dual diagnosis treatment program at the time of the disposition hearing.

The parties agreed below that Nicholas has a serious substance abuse problem, as evidenced by, among other things, his history of failed drug tests, his testing positive for cocaine and opiates just days before the current offenses, and his admission to being under the influence of Xanax pills, marijuana, and a mixture of fentanyl and heroin when he committed the current offenses.  His repeated substance abuse and his diagnosed mental health issues, which in the past included depression, anxiety disorder, ADHD, PTSD, and ODD, led to him being subject to "numerous" involuntary psychiatric holds under section 5150.  Between 2015 and 2019, he committed multiple juvenile offenses and probation violations, failed or refused to submit to drug tests and was terminated from a number of residential treatment programs.

Regarding the serious and violent nature of Nicholas' present offense, which demonstrated that he posed a danger to the public, Nicholas, while under the influence of illegal drugs, attempted to stab a friend with a foot-

long kitchen knife. He also was a danger to himself. In a span of 10 days less than two months before the current offense, police responding to emergency calls from his father twice found indications that Nicholas was cutting himself, and he was twice placed on involuntary psychiatric holds under section 5150. While in juvenile hall on the present offense, he was put on suicide watch after bruises and marks on his neck were observed by staff, and in the course of his psychological assessment he admitted to three prior suicide attempts by intentional overdoses on controlled substances.

The court also rightfully considered the probation department's recommendation that Nicholas be committed to YOTP. The department was concerned that placing him in an unlocked residential facility would pose a risk to both Nicholas and the public, including because of his "use of weapons, level of violence, severe noncompliance, historic refusal to participate in treatment, and his past placement terminations during his previous wardship." It believed Nicholas would benefit most in a program where he would be supervised daily, such as YOTP.

Furthermore, the record discloses that YOTP offers services from which Nicholas will benefit. The YOTP Handbook indicates that the program initially assesses residents' individual treatment needs and develops an individualized treatment plan, addresses their substance abuse and provides mental health counseling and cognitive behavior programming. The counselors, teachers, mental health specialists and deputy probation officers working in the program are all specially trained in a cognitive behavioral approach. All residents are "assessed for services to determine what level of drug and alcohol counseling is needed" and, "[o]nce assessed, some youth will be required to attend more intensive counseling." Residents will have the opportunity to earn their way through a five-phase program, with the last

13

phase being their release from the institutional setting. Nicholas will be able to participate in the 39-lesson cognitive behavioral intervention treatment class for substance abuse and other cognitive behavior programs and will have the opportunity to participate in individual counseling with a mental health therapist. And commitment to a locked facility will also give him a chance to remain clean and sober while he participates in this programming and treatment.

The court could reasonably conclude from this record that Nicholas' substance abuse and mental health issues, history of repeated offenses, and failures in voluntary treatment programs indicated his issues could be best addressed at YOTP. Moreover, at the time of the disposition hearing, Nicholas' counsel informed the court that he was not prepared to identify any unlocked residential treatment program that was then available to Nicholas.

Nicholas' appellate arguments are nothing less than an effort to relitigate his disposition. He argues, based on a distorted view of the record, that the court abused its discretion because YOTP offers no services for his mental health and substance abuse issues prior to seven months into the program; that YOTP is designed to contain, rather than treat, sophisticated criminals and chronic offenders only; and that a mental health specialist will not be involved in assessing him and developing a treatment plan for him in YOTP. He also makes scattershot criticisms of the details of the YOTP program. All of these arguments ignore the substantial evidence that we have discussed that supports his commitment to YOTP; rather, Nicholas in effect asks us to reweigh all of the evidence. We decline to do so. (*In re K.S.* (2016) 244 Cal.App.4th 327, 342 ["Our role as a reviewing court is not to reweigh competing evidence. Our task is to determine whether the record

14

contains substantial evidence to support the juvenile court's disposition decisions"].)

Nicholas further contends the court abused its discretion because he purportedly was doing well in the Kaiser out-patient treatment program prior to committing the present offenses. This ignores that during this time he was twice placed on 5150 holds because of apparent self-harm and engaged in repeated substance abuse, not to mention that he committed the present offenses. He highlights that a prior treatment program issued him a certificate of completion, ignoring that the program dismissed him early because of poor behavior. He points out that the court committed him to YOTP before conducting a further psychological evaluation of him, which evaluation was recommended by his assessing doctor and the probation department. This too ignores the evidence we have discussed that supports his commitment to YOTP, which includes the serious nature of his offenses and the danger to others that he posed, his repeated efforts at self-harm, his repeated previous failures in treatment programs, the risk that he would leave an unlocked facility, his continuing problematic behaviors, the assessment that was done, and the lack of any treatment program alternatives available at the time of the disposition hearing.

### 2. The Court's Denial of Nicholas' Request That He Be Allowed to Enter the Muir Wood Program

Nicholas also argues that the court unreasonably and in violation of his due process rights rejected his request that he be released to his mother so he could enter Muir Wood, an unlocked residential dual diagnosis treatment facility. Nicholas largely ignores the fact that his counsel requested this release *at a detention* hearing, after the court accepted his no contest pleas and found the supplemental allegations to be true. Nicholas offers no legal authority, and we are aware of none, that establishes the juvenile court erred

15

when it declined to release him to his mother at that time and instead chose to order a psychological assessment of Nicholas, await the probation department's dispositional recommendation and conduct a disposition hearing before determining what placement or commitment was in Nicholas' best interest.

Furthermore, at the disposition hearing, Nicholas' counsel did not offer Muir Wood as a placement option for Nicholas and did not recommend any such facility that would accept Nicholas at the time of that hearing. In fact, the court clarified, "But if I hear you right, what you're saying is, well, we haven't done that yet. We hope to get a package together sometime. We don't know when we'll get the package together, and we don't know what the package will look like." Thus, the court had no less restrictive alternative disposition to YOTP to consider that provided some treatment for Nicholas' issues. Further, as the court indicated, if circumstances changed and a facility became available that offered a better placement than YOTP, it would consider a modification of its order; and Nicholas was entitled to petition the court for a modification to the dispositional order. (§ 778, subd. (a)(1).)

In short, in this case there is sufficient evidence in the record, including Nicholas' demonstrated danger to himself and to the public, and his history of poor performance on probation and in prior residential programs, to support the juvenile court's order committing Nicholas to YOTP. The juvenile court did not abuse its discretion.

## II.

### *The Juvenile Court Did Not Impermissibly Delegate Judicial Authority to the Probation Department.*

At disposition, the juvenile court ordered Nicholas to successfully complete all phases of YOTP as determined by the probation department, and scheduled a review hearing in four months. Because Nicholas could return to

16

home supervision if he successfully completed the necessary YOTP phases, he argues the juvenile court improperly delegated to the probation department the duty to determine the length of his commitment, in violation of the separation of powers clause of the California Constitution and his state and federal due process rights. Contrary to his view, we agree with Division Five of this court that such a commitment to YOTP does not constitute an improper delegation of authority for the simple reason that while a probation officer will initially determine whether Nicholas successfully completes phases of the YOTP program, " '[t]he court clearly has the retained jurisdiction to determine whether minor has done so.' " (See *In re J.C.* (2019) 33 Cal.App.5th 741, 744-745 (*J.C.*), quoting *In re Robert M.* (2013) 215 Cal.App.4th 1178, 1185.) Because we reject the premise on which Nicholas' constitutional arguments are based, we need not address those arguments further. (See *J.C.*, at p. 745.)

The court in *J.C.* acknowledged that the probation department had day-to-day supervision and control over a minor committed to YOTP. (*J.C.*, *supra*, 33 Cal.App.5th at p. 745.) Still the court held, based on *In re Robert M.*, *supra*, 215 Cal.App.4th at p. 1185, that the department's day-to-day supervision and control was not improper because the court retained the ultimate authority to determine whether and when minor successfully completes YOTP, as demonstrated by the court's scheduling of a YOTP review hearing seven months after disposition. (*J.C.*, at pp. 745-746.) Furthermore, "at review hearings, minor may inform the juvenile court if he disagrees with the probation officer's assessment of his progress to date." (*Id.* at p. 747.)

We find *J.C.* persuasive, and, on similar facts, reach the same conclusion. Like *J.C.*, here, the juvenile court scheduled a YOTP review

17

hearing, in this case to occur four months after disposition. The juvenile court thus retained authority to overrule any assessments by the probation department upon Nicholas' disagreement with probation's findings. The court did not delegate authority to determine the length of Nicholas' commitment to the probation department.

## III.

### *The Court's Probation Condition Regarding Knives Is Overbroad.*

Nicholas next challenges the juvenile court's imposition of a probation condition that Nicholas "[n]ot . . . knowingly use or possess any knives or dangerous/deadly weapons." Nicholas argues this condition is unconstitutionally overbroad because it prohibits his lawful use of knives for eating. We agree to the extent the knives are not dangerous.

At disposition, a juvenile court "may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (§ 730, subd. (b).) " 'Because of its rehabilitative function, the juvenile court has broad discretion when formulating conditions of probation. "A condition of probation which is impermissible for an adult criminal defendant is not necessarily unreasonable for a juvenile . . . ." [Citation.] . . . 'Even conditions which infringe on constitutional rights may not be invalid if tailored specifically to meet the needs of the juvenile [citation].' [Citations.] But every juvenile probation condition must be made to fit the circumstances and the minor." (*In re Binh L.* (1992) 5 Cal.App.4th 194, 203.) "A restriction is unconstitutionally overbroad . . . if it (1) 'impinge[s] on constitutional rights,' and (2) is not 'tailored carefully and reasonably related to the compelling state interest in reformation and rehabilitation.' " (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.)

Whether a probation condition is unconstitutionally overbroad presents a question of law that is subject to de novo review. (See *In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143).[4]  A probation condition that prohibits owning, possessing, or using any dangerous or deadly weapons, including firearms, knives, and other concealable weapons, has been held to be constitutionally sound. (*People v. Moore* (2012) 211 Cal.App.4th 1179.)

The juvenile court's prohibiting Nicholas' knowing "use or possession of knives or dangerous/deadly weapons" is understandable in light of his attempt to stab his friend with a knife he obtained from his kitchen and the evidence of his repeatedly cutting of himself. Nonetheless, the condition as written is overbroad because some "knives," such as unserrated, dull butter knives, do not necessarily present a danger to Nicholas or to others. (See, e.g., *In re B.M.* (2018) 6 Cal.5th 528, 536 [evidence insufficient to show butter knife was a deadly weapon].) Therefore, we will order the juvenile court to modify the relevant probation condition to read that Nicholas "[n]ot knowingly use or possess dangerous/deadly weapons, including knives."

## IV.

### *The Maximum Term Imposed Must Be Corrected.*

Nicholas argues, and the People agree, that the court erred in calculating his maximum term and custody credits. We agree.

### A. The Maximum Term Should Be Four Years and Eight Months.

Welfare and Institutions Code section 726, subdivision (d)(1) provides that a minor may not be held in physical confinement for longer than the maximum term of imprisonment that could be imposed on an adult convicted

---

[4] The court in *In re Shaun R.* held that "the failure to object on the ground that a probation condition is unconstitutionally vague or overbroad is not forfeited on appeal." (*In re Shaun R.*, *supra,* 188 Cal.App.4th at p. 1143.) Thus, we consider Nicholas' argument even though he did not raise it below.

19

of the same offense.  The maximum term for assault by means of force in violation of Penal Code section 245, subdivision (a)(4), Nicholas' principal offense, is four years.  (Pen. Code, § 245, subd. (a)(4).)  The middle term for felony vandalism, Nicholas' subordinate offense, is two years.  (Pen. Code, §§ 594, subd. (b)(1), 1170, subd. (h).)  A juvenile court may impose only one-third of the middle term on a subordinate offense (*In re Eric J.* (1979) 25 Cal.3d 522, 536-538), which in this case should have been eight months.  Therefore, Nicholas' maximum term should have been set at four years and eight months, not five years.  We will order a correction of his maximum term.

### B.  Nicholas' Custody Credits Should Be Corrected to 30 Days.

"[A] minor is entitled to credit against his or her maximum term of confinement for the time spent in custody before the disposition hearing." (*In re Emilio C.* (2004) 116 81 Cal.App.4th 1058, 1067.)  Nicholas was taken into custody on August 6, 2019, and remained in custody through the disposition hearing on September 4, 2019, a total of 30 days.  However, the court awarded him custody credits of only 29 days.  Therefore, Nicholas' credits must be corrected to 30 days.[5]

### IV.

### *Nicholas Has Forfeited His Restitution Fine Claim and Has Not Established Ineffective Assistance of Counsel.*

The juvenile court ruled that Nicholas and his parents were liable to pay a $200 restitution fine under section 730.6, to which Nicholas' counsel did not object.  Nicholas now claims that, under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), this fine violates his constitutional rights to

---

[5] The People do not argue Nicholas has forfeited these claims by failing to first raise them below and, therefore, we do not address that issue.

due process and equal protection and that, if he has forfeited this claim, he received ineffective assistance of counsel (IAC). The People disagree with all of his arguments.[6] We conclude Nicholas forfeited his claim[7] and did not receive IAC.

The juvenile court set the $200 restitution fine amount without objection by appellant and without inquiring into his ability to pay. Section 730.6 provides that a restitution fine "shall be imposed regardless of the minor's inability to pay"; for felony offenses, the amount of the fine is at the court's discretion and shall not be less than $100 or more than $1,000. (§ 730.6, subds. (c), (b)(1).) Section 730.6 further provides that, in setting the amount of the fine, the juvenile court "shall consider any relevant factors including, but not limited to, the minor's ability to pay, the seriousness and gravity of the offense and the circumstances of its commission, any economic gain derived by the minor as a result of the offense, and the extent to which others suffered losses as a result of the offense." (*Id.*, subd. (d)(1).) Section 730.6 also states that "[t]he consideration of a minor's ability to pay may include his or her future earning capacity" and that "[a] minor shall bear the burden of demonstrating a lack of his or her ability to pay." (*Id.*, subd. (d)(2).)

The juvenile court imposed a fine close to the $100 minimum fine it was required to impose. Nicholas could have sought to have the fine reduced to the minimum of $100 based on inability to pay, but he failed to make any

---

[6] Nicholas contends that the People, despite their arguing that he did not receive ineffective assistance of counsel, do not raise forfeiture. Although the People do not refer to "forfeiture," their opposition to his IAC claim had no other purpose but to argue forfeiture. Therefore, we reject Nicholas' contention.

[7] *Dueñas* was decided in January 2019, well before the September 2019 disposition hearing.

attempt to meet his statutory burden of demonstrating a lack of ability to pay this fine. By failing to do so, he forfeited his right to challenge the fine on appeal.[8]

As for his IAC claim, " ' "[t]o establish ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant." ' " (*People v. Rices* (2017) 4 Cal.5th 49, 80.)

"Usually, 'ineffective assistance [of counsel claims are] more appropriately decided in a habeas corpus proceeding.' " (*People v. Hoyt* (2020) 8 Cal.5th 892, 958 (*Hoyt*).) "But . . . a defendant may raise the issue of counsel's effectiveness as a basis for a new trial, and, to expedite justice, a trial court should rule '[if] the court is able to determine the effectiveness issue on such motion.' " (*Ibid.*) " ' "[If] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' " (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266; see also *In re S. D.* (2002) 99 Cal.App.4th 1068, 1077 [ineffective assistance of counsel can be raised on direct appeal only "in the rare case where the appellate

---

[8] Nicholas argues that in any event *Dueñas* entitles him to an ability to pay hearing. As the People point out, an appellate court in *In re M.B.* (2020) 44 Cal.App.5th 281, 282 recently rejected the argument that *Dueñas* applies to restitution fines imposed in juvenile proceedings. But we need not decide this issue because of Nicholas' forfeiture.

22

record demonstrates 'there simply could be no satisfactory explanation' for trial counsel's action or inaction"].)

Nicholas does not show there can be no satisfactory explanation for counsel's failure to object to the $200 restitution fine. For example, counsel could have known that Nicholas was able to pay this fine, which was only $100 over the amount the court was required to impose regardless of Nicholas' ability to pay. Therefore, we reject Nicholas' IAC claim.

**DISPOSITION**

The orders appealed from are affirmed, except that we remand this matter to the juvenile court with instructions to modify Nicholas' probation condition regarding his use of knives to read that he "[n]ot knowingly use or possess dangerous/deadly weapons, including knives," change Nicholas' maximum term to four years and eight months and change his custody credits to 30 days.

_____

STEWART, J.

We concur.

_____

KLINE, P.J.

_____

MILLER, J.

*In re Nicholas P.* (A158426)

24